IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 5, 2004 Session

# BRUCE WOOD v. METROPOLITAN NASHVILLE & DAVIDSON COUNTY GOVERNMENT ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 02-3375-III     Ellen Hobbs Lyle, Chancellor**

<hr>

**No. M2003-01138-COA-R3-CV- Filed December 22, 2005**

<hr>

This appeal involves a dispute between a citizen and the Metropolitan Government of Nashville and Davidson County regarding the regulatory oversight of the now defunct Nashville Thermal Transfer plant. The Metropolitan Department of Health decided to reopen the plant's operating permit and to assess monetary penalties for the plant's violations of air quality regulations. The plant appealed these decisions to the Metropolitan Board of Health. While the administrative appeal was pending, the plant and the Department of Health settled their dispute. The Board of Health approved the settlement and even reduced the monetary penalties assessed against the plant over the objections of a private citizen who had unsuccessfully sought to intervene in the proceeding. The citizen then filed a petition for a common-law writ of certiorari in the Chancery Court seeking judicial review of the Board of Health's decision. After the plant was totally destroyed by fire, the trial court dismissed the citizen's petition on the ground that it was moot. We affirm the dismissal because the citizen lacked standing to file the petition for a common-law writ of certiorari.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM C. KOCH, JR., P.J., M.S., delivered the opinion of the court, in which HERSCHEL P. FRANKS and FRANK G. CLEMENT, JR., JJ., joined.

Bruce Wood, Nashville, Tennessee, Pro Se.

Karl F. Dean, Margaret Holleman, and John L. Kennedy, Nashville, Tennessee, for the appellees, Metropolitan Government of Nashville and Davidson County, Metropolitan Board of Health, and Metropolitan Public Health Department.

Sharon O. Jacobs, Nashville, Tennessee, for the appellee, Nashville Thermal Transplant Corporation.

**OPINION**

**I.**

During the 1970s, the Metropolitan Government of Nashville and Davidson County decided to construct a power plant that used solid waste as fuel to provide heating and cooling to the buildings in the downtown district. The Nashville Thermal Transfer Corporation (NTTC) was formed for that purpose. In the late 1990s, NTTC was operating three waste-to-energy boilers and other equipment[1] under a Part 70 operating permit[2] issued in 1998 by the Metropolitan Department of Health (Department). On March 9, 2000, the Department issued NTTC a revised operating permit; however, a short time later, the Director of Health (Director) announced that she was considering whether she should reopen the permit application for cause[3] based on evidence that NTTC was not operating in compliance with applicable air quality standards.

The Metropolitan Board of Health (Board) conducted a hearing on January 23, 2002 to receive public comment regarding the reopening of NTTC's permit. Bruce Wood, a resident of Nashville, was present at this hearing and advocated a "safe closedown of NTTC."

Following the hearing, the Director informed NTTC that she had determined that several sections of its permit should be revised or revoked to assure the plant's compliance with applicable air quality standards. However, she also invited NTTC to present a comprehensive plan for eliminating excess emissions and otherwise complying with air quality regulations within fifteen days. Sixteen days later, having received nothing from NTTC, the Director issued an "Official Notice of Violation" to NTTC alleging seventy-five violations of its operating permit from October 1, 2001 through December 31, 2001. Apparently, this order also assessed substantial penalties against NTTC.[4]

NTTC appealed the Department's decision to reopen its permit, as well as the Department's notice of violation to the Board. At a public meeting on February 12, 2002, the Board decided to refer NTTC's consolidated appeals to an administrative law judge in accordance with Metropolitan Gov't of Nashville and Davidson County, Tennessee Code § 10.56.090(C)(4) (1997) (Metro Code) and Tenn. Code Ann. §§ 4-5-301 to -325 (2005). Thereafter, the Director and NTTC agreed upon a plan of compliance that addressed all the issues raised in the notice of violation. They informed

---

[1] NTTC's equipment consisted of three municipal waste combustors, two gas and oil fired boilers, four cooling towers, and two chillers.

[2] *See* Metropolitan Board of Health, Pollution Division, Regulation No. 13, "Part 70 Operating Permit Program" (October 12, 1993) (amended April 9, 2002) (Regulation No. 13).

[3] *See* Regulation No. 13 § 13-5(f).

[4] This notice of violation does not appear to be in the record, although the parties have included a revised assessment of civil penalties dated October 15, 2002. The revision, however, does not state the amount of penalties originally assessed against NTTC on February 8, 2002. Mr. Wood asserts in his brief that the penalties amounted to around $942,000.

the administrative law judge in a letter transmitting their proposed final order that portions of the plan required EPA approval that had not yet been obtained. On May 1, 2002, the administrative law judge filed an initial order reciting the parties' settlement and directing them to submit a proposed final order as soon as the EPA had approved the plan.

On May 3, 2002, Mr. Wood filed a pro se motion pursuant to Tenn. R. Civ. P. 24.01 seeking to intervene in the administrative proceedings before the administrative law judge. He stated that he was a long-time environmentalist with special interest in solid waste, air pollution, and water quality and that he was president of an environmental group called "BURNT" (Bring Urban Recycling to Nashville Today). Mr. Wood insisted that NTTC had polluted Nashville's air and had operated over the years with "human eror [sic], poor training, and bad management." Accordingly, he objected to the proposed settlement, demanded an "open hearing . . . by the Health Board or a designated Hearing Officer," and insisted that the administrative law judge should make findings of fact regarding the seventy-five violations cited in the Director's notice of violation.

On May 13, 2002, the administrative law judge denied Mr. Wood's motion to intervene. He pointed out that applications to intervene were governed by Tenn. Code Ann. § 4-5-310 (2005) and Tenn. Comp. R. & Regs. 1360-4-1-.12 (2004), not by Tenn. R. Civ. P. 24. The administrative law judge also determined that Mr. Wood did not have standing to intervene because he failed to demonstrate a recognizable legal interest in the proceedings that "would be adversely affected by the resolution of the administrative matter without his intervention." The judge further concluded that Mr. Wood's motion was untimely because the parties had already filed an agreed initial order and thus the case had already been concluded. Finally, the judge concluded that the interests of justice and the prompt conduct of the proceedings would be impaired by Mr. Wood's intervention due to the fact that the parties had already resolved their dispute.

The EPA approved NTTC's compliance plan after the entry of the administrative law judge's order. Thereafter, the administrative law judge filed an agreed final order on May 23, 2002. This order provided that the Department would consider the expenses incurred by NTTC in converting to cleaner gas burning boilers to offset the penalties assessed in its notice of violation. Ironically, the NTTC plant was destroyed by fire later that same day.

On May 28, 2002, Mr. Wood filed a motion to reconsider the denial of his request to intervene in the enforcement proceedings. The administrative law judge denied the motion on June 5, 2002, noting that in addition to Mr. Wood's lack of standing, the enforcement proceeding was now moot because of the entry of the agreed final order on May 23, 2002. The Board unanimously accepted the administrative law judge's orders on July 9, 2002.

Mr. Wood remained dissatisfied. During the Board's November 12, 2002 meeting, he insisted that the Board should review and vacate the order denying his petition to intervene and that the Board should reopen the enforcement proceedings. After listening to Mr. Wood, the Board declined to permit him to intervene in the enforcement proceeding, pointing out that there was nothing left to consider because the entry of the agreed final order on May 23, 2002 effectively ended the proceeding.

Still dissatisfied, Mr. Wood filed a pro se petition for common-law writ of certiorari in the Chancery Court for Davidson County immediately after the Board denied his request to intervene. He took issue with the Board's refusal to permit him to intervene in the enforcement proceeding as well as with the agreed final order. He maintained that he had standing to file the petition because he lived less than one mile away from the NTTC plant and because he had attended the Board's meetings and had spent lengthy amounts of time at the Department researching air quality violations by the NTTC.

On October 15, 2002, the Director issued a revised assessment of penalties against NTTC for the violations noted in the notice of violation. After taking into account the facts that the plant had been destroyed by fire and that NTTC had incurred significant expenses installing temporary gas boilers after the plant was destroyed, the Director recommended that the monetary assessment should be reduced to $100,000. The Board considered the revised assessment at a public meeting on December 10, 2002. Mr. Wood and several other members of BURNT were present at the meeting to express concerns regarding NTTC's violations and to protest the revised penalties. After listening to the arguments of Mr. Wood and his colleagues, the Board unanimously voted to approve the Director's revised penalty assessment.

On February 4, 2003, the Metropolitan Government and NTTC filed motions for a more definite statement and to dismiss Mr. Wood's petition. Mr. Wood's lack of standing was one of the grounds asserted in the motion to dismiss. Mr. Wood filed an amended petition on February 14, 2003, in which he claimed (1) that he had been denied an opportunity to appeal the administrative law judge's May 23, 2002 agreed order to the Board; (2) that the administrative law judge failed to make the required findings of fact and conclusions of law; (3) that the Board prevented him from exercising his rights to speak, to associate, and to appeal a decision of the Director; (4) that the Clean Air Act prohibited the Metropolitan Government from regulating and permitting the NTTC plant because the City was responsible for the plant's design and construction; and (5) that there was no basis for the Board's decision to reduce NTTC's alleged $942,000 in fines for previous violations to $100,000. Accordingly, Mr. Wood requested the court (1) to order the defendants to assemble and file a record of the proceedings, (2) to order the Board to conduct a permit closure hearing for the NTTC plant, and (3) to order that the city's attorneys be barred from representing the defendants due to a conflict of interest under the Clean Air Act.

The trial court entered an order on April 1, 2003, granting the Metropolitan Government's and NTTC's motion to dismiss. The court determined that the case was moot because the NTTC plant had been destroyed by fire and that the waste incinerating portions had not been reconstructed. The court pointed out that requiring the Board to institute new proceedings was not warranted because there were no plans to rebuild the plant. By the same token, it also pointed out that requiring the enforcement proceedings to be reopened to enable Mr. Wood to participate in them would serve no useful purpose. Mr. Wood filed this pro se appeal taking issue with what he perceives to be numerous procedural and substantive errors committed by the Department and the Board.

**II.**

**MR. WOOD'S STANDING TO SEEK JUDICIAL REVIEW OF THE BOARD'S DECISION**

The Metropolitan Government and NTTC asserted in the trial court and argue on this appeal that Mr. Wood lacks standing to file a petition for a common-law writ of certiorari to review the Board's decisions at issue in this case. While the trial court dismissed Mr. Wood's petition on the ground of mootness, we have determined that we should first address the standing question because deciding the case on the ground of mootness necessarily presupposes that Mr. Wood had standing to file the petition but that intervening events prevented the court, as a practical matter, from providing him any relief.

**A.**

The doctrine of standing is used to determine whether a particular plaintiff is entitled to judicial relief. *Knierim v. Leatherwood*, 542 S.W.2d 806, 808 (Tenn. 1976); *Garrison v. Stamps*, 109 S.W.3d 374, 377 (Tenn. Ct. App. 2003). It requires the court to determine whether the plaintiff has alleged a sufficiently personal stake in the outcome of the litigation to warrant a judicial intervention. *SunTrust Bank v. Johnson*, 46 S.W.3d 216, 222 (Tenn. Ct. App. 2000); *Browning-Ferris Indus. of Tennessee, Inc. v. City of Oak Ridge*, 644 S.W.2d 400, 402 (Tenn. Ct. App. 1982). To establish standing, a plaintiff must show: (1) that it has sustained a distinct and palpable injury, (2) that the injury was caused by the challenged conduct, and (3) that the injury is one that can be addressed by a remedy that the court is empowered to give. *City of Chattanooga v. Davis*, 54 S.W.3d 248, 280 (Tenn. 2001); *In re Youngblood*, 895 S.W.2d 322, 326 (Tenn. 1995); *Metropolitan Air Research Testing Auth., Inc. v. Metropolitan Gov't*, 842 S.W.2d 611, 615 (Tenn. Ct. App. 1992).

The primary focus of a standing inquiry is on the party, not on the merits of the party's claim. *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 484, 102 S. Ct. 752, 765 (1982); *Petty v. Daimler/Chrysler Corp.*, 91 S.W.3d 765, 767 (Tenn. Ct. App. 2002). Thus, a party's standing does not depend on the likelihood of success of its claim on the merits. *Mayhew v. Wilder*, 46 S.W.3d 760, 767 (Tenn. Ct. App. 2001); *Metropolitan Air Research Testing Auth., Inc. v. Metropolitan Gov't*, 842 S.W.2d at 615. However, because a party's standing may hinge on the nature of its claims, a standing inquiry requires a "careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *Allen v. Wright*, 468 U.S. 737, 752, 104 S. Ct. 3315, 3325 (1984).

The sort of distinct and palpable injury that will create standing must be an injury to a recognized legal right or interest. In many cases, this right or interest may be created or defined by statute. Thus, in cases where a party is seeking to vindicate a statutory right of interest, the doctrine of standing requires the party to demonstrate that its claim falls within the zone of interests protected or regulated by the statute in question. *Federal Election Comm'n v. Akins*, 524 U.S. 11, 20, 118 S. Ct. 1777, 1783-84 (1998); *Chattanooga Ry. & Light Co. v. Bettis*, 139 Tenn. 332, 337, 202 S.W. 70, 71 (1918); *Jefferson County v. City of Morristown*, No. 03A01-9810-CH-00331, 1999 WL 817519, at *6 (Tenn. Ct. App. Oct. 13, 1999) (No Tenn. R. App. P. 11 application filed).

In order to have standing to file a petition for a common-law writ of certiorari, the party filing the petition must demonstrate that it is "aggrieved" by the decision sought to be reviewed. Tenn. Code Ann. § 27-9-101 (2000). For the purposes of Tenn. Code Ann. § 27-9-101, to be "aggrieved," a party must be able to show a special interest in the agency's final decision or that it is subject to a special injury not common to the public generally. *Buford v. State Bd. of Elections*, 206 Tenn. 480, 484, 334 S.W.2d 726, 728 (1960); *League Cent. Credit Union v. Mottern*, 660 S.W.2d 787, 791-92 (Tenn. Ct. App. 1983). The party must also show that it was a party to the agency proceedings sought to be reviewed. *City of Brentwood v. Metropolitan Government*, 149 S.W.3d 49, 57 (Tenn. Ct. App. 2004); *Horton v. Tennessee Dep't of Corr.*, No. M1999-02798-COA-R3-CV, 2002 WL 31126656, at *4 (Tenn. Ct. App. Sept. 26, 2002) (No Tenn. R. App. P. 11 application filed).

**B.**

Mr. Wood was not a party to the enforcement proceedings. This alone undermines his standing to file a petition for a common-law writ of certiorari. Therefore, we must first address whether the administrative law judge and the Board properly denied his request to intervene in the enforcement proceeding involving the NTTC plant.

NTTC's appeal from the Director's decision to reopen its permit and to assess civil penalties was governed by the contested case provisions of the Uniform Administrative Procedures Act.[5] Therefore, the procedures and criteria of intervention are found in Tenn. Code Ann. § 4-5-310 and Tenn. Comp. R. & Regs. 1360-4-1-.12(2) (2004). These provisions are designed to strike a balance between public participation in an administrative proceeding and the rights of the parties. The rights of the parties counterbalances the drive to let all interested persons participate. 2 CHARLES H. KOCH, JR., ADMINISTRATIVE LAW AND PRACTICE § 5.20[3], at 45-46 (2d ed. 1997). Accordingly, intervention in administrative proceedings is not of right, and administrative agencies have substantial discretion whether to grant or deny intervention. *Tofias v. Energy Facilities Siting Bd.*, 757 N.E.2d 1104, 1109 (Mass. 2001); *Cortland Glass Co. v. Angello*, 752 N.Y.S.2d 741, 743 (App. Div. 2002); *West Chester Area Sch. Dist. v. Collegium Charter Sch.*, 812 A.2d 1172, 1186 (Pa. 2002).

The administrative law judge did not err by denying Mr. Wood's request to intervene in the enforcement decision after the Department and NTTC had reached a settlement regarding the violations enumerated in the notice of violation. There is no doubt that Mr. Wood had made it his business to carefully scrutinize the operation of NTTC's plant and that he was extremely concerned about the plant's impact on Nashville's air quality. While commendable, Mr. Wood's research regarding pollution, his activities with BURNT, and his faithful attendance at public meetings do not necessarily give him a right to intervene as a party in enforcement proceedings.

---

[5]Even though the Uniform Administrative Procedures Act applies to proceedings before state agencies, the Metropolitan Council decided that appeals to the Board from the assessment of civil penalties would be treated as a contested case under the Uniform Administrative Procedures Act. Metro. Code § 10.56.090(C)(4).

The Department is entrusted with the power to enforce the city's air quality regulations. In the absence of proof to the contrary, we must presume that the Department was discharging its duties in good faith, *Williams v. Am. Plan Corp.*, 216 Tenn. 435, 441, 392 S.W.2d 920, 923 (1965); *State ex rel. Witcher v. Bilbrey*, 878 S.W.2d 567, 576 (Tenn. Ct. App. 1994), and in the manner prescribed by law. *Reeder v. Holt*, 220 Tenn. 428, 435-36, 418 S.W.2d 249, 252 (1967); *Jackson v. Aldridge*, 6 S.W.3d 501, 503 (Tenn. Ct. App. 1999). Mr. Wood has not cited, and our independent research has failed to uncover, any legal authority for the proposition that citizens with generalized grievances such as Mr. Wood must be permitted to participate as a party in an enforcement proceeding such as the one involved in this case. Mr. Wood was afforded great latitude in presenting his information and opinions to the Department and the Board at each public step of the proceeding. Accordingly, we find no error in the administrative law judge's decision to deny his petition to intervene as a party in the enforcement proceedings regarding NTTC's plant.

## C.

We now turn to Mr. Wood's standing to file the petition for writ of common-law certiorari. Because he was not a party to the enforcement proceeding before the Board, he did not have standing to seek judicial review of the Board's decision beyond its decision to uphold the administrative law judge's denial of his petition to intervene, which we have now affirmed. In addition, in all his papers, Mr. Wood has failed to point out how he has sustained some special injury not common to the general public by virtue of the Board's decision to approve the agreed compliance order and the Director's revised assessment of administrative penalties. Thus, he failed to demonstrate that he has standing to file the petition under Tenn. Code Ann. § 27-9-101, and his petition should have been dismissed on that ground.[6]

## III.

We affirm the judgment dismissing Mr. Wood's petition and remand the case to the trial court for whatever further proceedings may be required. We tax the costs of this appeal to Bruce Wood for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., P.J., M.S.

---

[6]The Court of Appeals may affirm a judgment on different grounds than those relied on by the trial court when the trial court reached the correct result. *Continental Cas. Co. v. Smith*, 720 S.W.2d 48, 50 (Tenn. 1986); *Arnold v. City of Chattanooga*, 19 S.W.3d 779, 789 (Tenn. Ct. App. 1999); *Allen v. National Bank of Newport*, 839 S.W.2d 763, 765 (Tenn. Ct. App. 1992); *Clark v. Metropolitan Gov't*, 827 S.W.2d 312, 317 (Tenn. Ct. App. 1991).