# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### SEPTEMBER 18, 2008 Session

## CHERYL MCLEMORE HEARN, ET AL. v. QUINCE NURSING and REHABILITATION CENTER, LLC, ET AL.

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-000735-06     Rita L. Stotts, Judge**

---

**No. W2007-02563-COA-R3-CV - Filed October 16, 2008**

---

This appeal concerns the enforceability of an arbitration agreement between a nursing home and one of its patients. The trial court found that the agreement was unenforceable because the nursing home's agent gave an insufficient explanation of the agreement's meaning to the patient's daughter. We do not reach the merits of the trial court's conclusion. Instead, we find that the patient's daughter did not have the authority to sign the agreement on her father's behalf. We, therefore, affirm the trial court's denial of the defendant's motion to compel arbitration.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. STEVEN STAFFORD, J., delivered the opinion of the court, in which ALAN E. HIGHERS, P.J., W.S, and DAVID R. FARMER, J., joined.

Rebecca Adelman, Memphis, TN, for the Appellants
Chase Pittman, Memphis, TN, for the Appellants

John Keith Perry, Jr., Southaven, MS, for the Appellees

### OPINION

On February 27, 2002, Simmie McClinton ("Decedent") was admitted to a nursing facility called American Transitional Care ("ATC"). In July 2003, new owners bought ATC and changed its name to Quince Nursing and Rehabilitation Center ("Quince"). During the ownership transition, Sheila Craft, Quince's admissions counselor met with the Decedent's daughter, Juton Wilson. Ms. Wilson had been her father's caregiver for several years and had taken a job at Quince. Throughout the admissions process, the Decedent was incompetent. During the meeting, Ms. Wilson signed several documents for her father's admission, including the "Resident and Facility Arbitratrion Agreement" ("Arbitration Agreement"). Under the Arbitration Agreement, Decedent agreed to submit all potential claims against Quince to binding arbitration. Decedent remained at Quince until his death on April 5, 2005.

On February 16, 2006, Cheryl McLemore Hearn, as administratrix of Decedent's estate, filed a Complaint against Quince for wrongful death and nursing home negligence.[1] In response to the complaint, Quince filed a Motion to Compel Arbitration, based upon the Arbitration Agreement signed by Ms. Wilson. After a brief discovery period, the trial court held a hearing on the Motion on August 16, 2007. On October 8, 2007, the trial court issued an order denying Quince's motion. The trial court's order included specific findings of fact and conclusions of law:

> 4. On October 31, 2003, Ms. Craft on behalf of the nursing home, and Ms. Wilson on behalf of her father, executed an Admission Agreement for the continuing residency of Mr. McClinton at the nursing home following a change of the facility's ownership;
>
> 5. The Admissions Agreement contains an Arbitration Agreement, also executed by Ms. Craft and Ms. Wilson;
>
> 6. At no time did Mr. McClinton give Ms. Wilson a power of attorney, and at no time did a court appoint Ms. Wilson as her father's conservator;
>
> 7. Ms. Wilson had authority to bind her father to the Arbitration Agreement under the common law of apparent agency;
>
> 8. Accordingly, the Court declines to address whether Ms. Wilson had such authority as her father's healthcare surrogate under Tenn. Code Ann. § 68-11-1806;
>
> 9. Further, though, the evidence shows that Ms. Craft's customary explanation of the Arbitration Agreement to prospective signors included a statement that one could still sue in court if one were to sign the Agreement;
>
> 10. The evidence further shows that, prior to execution of the Arbitration Agreement Sheila Craft gave such an explanation, which is inaccurate, to Ms. Wilson;
>
> 11. Ms. Craft was a credible witness, had no fraudulent intent in giving the inaccurate explanation and was merely mistaken in her understanding of the Agreement;
>
> 12. Because of the inaccurate explanation, the Arbitration Agreement should not be enforced and Defendant's Motion should not be granted.

Quince appeals and raises one issue for review as stated in its brief:

---

[1] Although several defendants were named in the original Complaint, Quince is the sole appellant in this appeal.

1. Did the Trial Court err in denying Appellants' Motion to Compel Arbitration, which was predicated upon an Arbitration Agreement that Juton Wilson, a daughter of Simmie McClinton, signed for her father in connection with her father's course of care at Appellant's skilled nursing facility?

Decedent's Estate raises the following three (3) issues:

1. Did the lower court err in denying Appellant's Motion to Compel Arbitration, which sought enforcement of an admission agreement that contained terms which both parties were mistaken as to the effect on their constitutional rights?
2. Did the lower court err in finding that Juton Wilson had apparent authority to sign an arbitration agreement on behalf of her father in absence of a Power of Attorney or court order granting such power?
3. Should the lower court have found that the arbitration agreement was an unconscionable contract of adhesion?

**Standard of Review**

When considering a denial of a motion to compel arbitration on appeal, we follow the standard of review that applies to non-jury trials. *Spann v. Am. Express Travel Related Services Co.*, 224 S.W.3d 698, 706-07 (Tenn. Ct. App. 2006). Therefore, our review of the trial court's findings of fact is "de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). Our review of questions of law is *de novo* without a presumption of correctness. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997).

**Law and Analysis**

The gravamen of this case rests on the question of whether Ms. Wilson had the authority, express or otherwise, to sign the admissions agreement on behalf of her father. In order to bind the Decedent to the arbitration agreement, Ms. Wilson must have had authority to act as his agent. The parties agree that Ms. Wilson was not given express authority by her father to sign the agreement. The trial court found that Ms. Wilson did not have a power of attorney or the authority to act as Mr. McClinton's conservator. Instead, the trial court found that Ms. Wilson had the apparent authority to agree to the arbitration agreement.

-3-

Quince argues that Ms. Wilson's history of making some medical decisions for her father is sufficient to provide her apparent authority to waive his right to a jury trial. Specifically, Quince points out that Ms. Wilson made the decision to admit her father to a nursing home on multiple occasions. Furthermore, Quince argues that the Decedent never objected to Ms. Wilson's decisions, even before his mental capacity diminished.

We have addressed this precise argument in several recent cases. *See*, *Ricketts v. Christian Care Center of Cheatham County, Inc.*, No. M2007-02036-COA-R9-CV, 2008 WL 3833660 (Tenn. Ct. App. Aug. 15, 2008); *Thornton v. Allenbrooke Nursing & Rehab. Ctr., LLC*, No. W2007-00950-COA-R3-CV, 2008 WL 2687697 (Tenn. Ct. App. July 3, 2008); *Raiteri ex rel Cox v. NGC Healthcare/Knoxville, Inc.*, No. E2003-00068-COA-R9-CV, 2003 WL 23094413 (Tenn. Ct. App. Dec. 30, 2003). These cases reflect the general trend that we will "[find] authority if given expressly, either through oral expression or via a Power of Attorney document, and [will] find no authority if the principal did not exhibit some sort of act to convey authority." *Thornton*, 2008 WL 2687697, at *7.

In *Thornton*, the patient's daughter signed a packet of admissions documents, including an arbitration agreement, on behalf of her mother. *Thornton*, 2008 WL 2687697, at *1. The daughter did not have express authority, a durable power of attorney, or a power of attorney for health care decisions. *Id.*. at *6. The court concluded that these facts, without more, were insufficient to give the daughter apparent authority to waive her mother's right to a jury trial.

The only significant distinction between the present case and *Thornton* is that the Decedent in this case was incompetent during the admissions process. In *Ricketts*, however, the court found that the patient's incompetence did not change the analysis on the issue of authority. *Ricketts*, 2008 WL 3833660, at *2. The court held that "[e]ven if we assume that [the patient] was not competent at the time that Ms. Ricketts signed the agreement, that fact does not make a difference in the result." *Id*.

Based upon the existing jurisprudence on this issue, and in light of the holdings in *Thornton* and *Ricketts*, we conclude that the facts of this case do not support the trial court's conclusion that Ms. Wilson had apparent authority to bind her father to the Arbitration Agreement. The record simply does not contain any basis for Ms. Wilson to have authority. Without some action by the Decedent, we cannot find that he unknowingly gave his daughter the authority to waive his constitutional rights.

Next, we turn to Quince's argument that Ms. Wilson had authority to sign for her father pursuant to the Tennessee Health Care Decisions Act ("THCDA"), Tenn. Code Ann. § 68-11-1801, *et seq*. Tenn. Code Ann. § 68-11-1806(c)(1) provides:

> In the case of a patient who lacks capacity, has not appointed an agent, has not designated a surrogate, and does not have a guardian, or whose agent, surrogate, or guardian is not reasonably available, the patient's surrogate shall be identified by the supervising health care provider and documented in the current clinical record of the institution or institutions at which the patient is then receiving health care.

*Id*. Quince designated Ms. Wilson as her father's surrogate in its records.

Quince's reliance on the THCDA is misplaced because the act did not take effect until July 1, 2004. Tenn. Pub. Acts ch. 862. The Arbitration Agreement at issue was signed on October 31, 2003. In *Ricketts*, the court ruled that the THCDA would not apply retroactively. *Ricketts*, 2008 WL 3833660, at *4. Therefore, we conclude that the THCDA does not apply to Ms. Wilson. This issue is without merit.

## Conclusion

Because Ms. Wilson did not have authority to sign the Arbitration Agreement on her father's behalf, the agreement is unenforceable. Having reached this decision, we affirm the order of the trial court and find the remaining issues pretermitted. We note that, although the trial court based its decision on its conclusion that the contract was unenforceable because of an inadequate explanation, this Court may affirm a decision on grounds different than those relied on by the trial court when the trial court reached the correct result. *See, e.g.*, *Wood v. Metro. Nashville & Davidson Co. Gov't.*, 196 S.W.3d 152, 160 n.6 (Tenn. Ct. App. 2005). Costs of this appeal are assessed to Quince and its surety.

_____
J. STEVEN STAFFORD, J.