IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 18, 2013 Session

**IN RE HAYDEN C. G-J.**[1]

**Appeal from the Circuit Court for Warren County**
**No. 4016     Larry B. Stanley, Jr., Judge**

No. M2012-02701-COA-R3-CV -Filed **November 12, 2013**

Former unmarried partner of the child's adoptive mother seeks visitation with the child. Because the former partner has no biological or legal relationship with the child, we affirm the trial court's finding that she does not have standing to seek visitation.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR. and RICHARD H. DINKINS, JJ., joined.

Abby Rose Rubenfeld, Nashville, Tennessee, for the appellant, Jennie L. G.

R. Michelle Blaylock-Howser, Murfreesboro, Tennessee, for the appellee, Jennifer Lynn J.

Julia Jean Tate, Brentwood, Tennessee, for the Amicus Curiae, National Association of Social Workers.

**OPINION**

The facts of this case are essentially undisputed. Jennifer J. and Jennie G. were in a romantic and committed relationship for approximately fourteen years. They held themselves out as a couple to family and friends. They desired to co-parent a child together and, in August 2006, Jennifer found out that two friends were expecting a child and wanted to place the child for adoption. Jennifer and Jennie took the biological mother into their home, providing shelter, food, financial and emotional support and pre-natal care.

---

[1]This Court has a policy of protecting the identity of children by initializing the last names of the parties.

After the birth of the child in 2007, Jennie selected the name "Hayden," to which Jennifer agreed. The child went home with the parties.[2] Hayden lived with both parties as a family until he was 4 1/2 years old. He called Jennifer "Mama" and Jennie "Maje," which stood for "Mama Jennie." Jennifer adopted Hayden. His last name is Jennie's and Jennifer's, hyphenated. Jennie was not included in the adoption process. Jennifer is Hayden's sole legal parent. During the time the parties lived together with Hayden, they shared caretaking and financial responsibility for him.

Jennifer moved out of the residence in June or July of 2011, taking Hayden with her. Jennifer refused to allow Jennie to interact with the child. On August 5, 2011, Jennie filed a petition seeking an award of either primary residential placement or liberal visitation, as well as other relief not pertinent to this appeal. After a hearing, the trial court found the above facts and many others, and determined that Hayden had a bonded, parent/child relationship with both parties. The trial court found that it was "in the best interests of Hayden [] to protect the bonded, loving relationship that he has with [both parties]." However, as a matter of law the court went on to find that Jennifer had superior parental rights and that the Court of Appeals had "rejected the argument that an unmarried person in a close intimate relationship with a child's natural parent can be a 'parent,'" and that the appellate court had also rejected the arguments of de facto parenting or in loco parentis. Consequently, the trial court denied Jennie's petition. Jennie appealed and was allowed to have visitation pending the appeal.

STANDARD OF REVIEW

The outcome of this appeal hinges on a question of law. Questions of law are reviewed de novo by the appellate courts with no presumption of correctness. *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999).

ANALYSIS

Both parties focus on *In re Thompson*, 11 S.W.3d 913 (Tenn. Ct. App. 1999). *Thompson* involved a consolidated appeal in which the Court of Appeals addressed the following issue:

> Whether a petition for visitation may be brought by a woman who, in the context of a long-term relationship, planned for, participated in the conception and birth of, provided financial assistance for, and until foreclosed from doing so by the biological mother, acted as a parent to the child ultimately borne by

---

[2]The biological parents surrendered their parental rights.

2

her partner.

*Id*. at 915. *Thompson* held that women who had no biological or legal relation to the children of their former partners lacked standing to seek visitation. *Id.* at 923. Appellant Jennie maintains that the decision is outdated or wrongly decided and should be overruled. Jennifer bases her argument on the decision's correctness.

The concept of standing involves whether a person has "a sufficiently personal stake in a matter at issue to warrant a judicial resolution of the dispute." *State v. Harrison*, 270 S.W.3d 21, 28 (Tenn. 2008). Not just any personal stake will do. The person seeking standing must claim "'an injury to a recognized legal right or interest.'" *Id*. (quoting *Wood v. Metro. Gov't of Nashville & Davidson Cnty.*, 196 S.W.3d 152, 158 (Tenn. Ct. App. 2005)). Where the person seeking standing bases the right to standing on a statute, he or she must show that the "'claim falls within the zone of interests protected or regulated by the statute in question.'" *Id*. (quoting *Wood*, 196 S.W.3d at 158).

The *Thompson* court began its analysis by examining the meaning of the term "parent" under Tennessee law.

> Tennessee Code Annotated section 36-1-102 defines the terms "legal parent" and "parent," and, while the terms of this statute make these definitions expressly applicable only to part 1 of chapter 1 in title 36 (*i.e.*, sections 36-1-101 *et seq.*, which set forth general provision relating to adoption), "[s]tatutes 'in pari materia'—those relating to the same subject or having a common purpose—are to be construed together." *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995). Accordingly, we find that section 36-1-102 provides guidance as to the legislature's meaning of the term "parent." Section 36-1-102(26)[3] states that a "legal parent" may be any of the following:
>
>> (A) The biological mother of a child;
>> (B) A man who is or has been married to the biological mother of the child if the child was born during the marriage or within three hundred (300) days after the marriage was terminated for any reason, or if the child was born after a decree of separation was entered by a court;
>> (C) A man who attempted to marry the biological mother of the child before the child's birth by a marriage apparently in compliance with the law, even if the marriage is declared

---

[3] The definition of "legal parent" is now at Tenn. Code Ann. § 36-1-102(28).

3

invalid, if the child was born during the attempted marriage or within three hundred (300) days after the termination of the attempted marriage for any reason;

(D) A man who has been adjudicated to be the legal father of the child by any court or administrative body of this state or any other state or territory or foreign country or who has signed, pursuant to §§ 24-7-118[4], 68-3-203(g), 68-3-302 and 68-3-305(b), an unrevoked and sworn acknowledgment of paternity under the provisions of Tennessee law, or who has signed such a sworn acknowledgment pursuant to the law of any other state, territory, or foreign country; or

(E) An adoptive parent of a child or adult.

Tenn. Code Ann. 36-1-102(26) (Supp.1998). Moreover, section 36-1-102(34) provides a somewhat similar, but broader definition of the looser term "parent" by stating: "'Parent(s)' means any biological, legal, adoptive parent(s) or, for purpose of §§ 36-1-127–36-1-141, stepparents." *Id.* § 36-1-102(34)[5].

*Id*. at 918.

Jennie does not fit any of these definitions. However, she argues that the Tennessee Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") provides her with standing to pursue this matter. We note that the trial proceedings in *Thompson* were held in 1997 before the UCCJEA was enacted in 1999.

The legislature has instructed us to construe the UCCJEA "according to its purposes." Tenn. Code Ann. § 36-6-202. Those purposes are to:

(1) Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being;

(2) Promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child;

(3) Discourage the use of the interstate system for continuing controversies

---

[4]The statute regarding the voluntary acknowledgment of paternity is now at Tenn. Code Ann. § 24-7-113.

[5]Tenn. Code Ann. § 36-1-102(34) is now Tenn. Code Ann. § 36-1-102(36).

4

over child custody;
(4) Deter abductions of children;
(5) Avoid relitigation of custody decisions of other states in this state; and
(6) Facilitate the enforcement of custody decrees of other states.

The court's objective in construing a statute is to carry out legislative intent without broadening or restricting the statute beyond its intended scope. *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 678 (Tenn. 2002). We presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General Assembly is not violated by so doing. *In re C.K.G.*, 173 S.W.3d 714, 722 (Tenn. 2005). The clear intent of the UCCJEA is to determine jurisdiction in child custody matters involving multiple states. It is a uniform law developed by the National Conference of Commissioners on Uniform State Laws, Tenn. Code Ann. § 36-6-203, with the obvious intent to create uniformity among the states when such jurisdictional matters arise.[6] The UCCJEA has no application to the case before us because the only possible state with jurisdiction is Tennessee.

Consequently, no statute gives Jennie a legal right or interest regarding visitation with Hayden. It is not, however, an exclusive requirement that a legal right or interest must be created by a statute. *Harrison*, 270 S.W.3d at 28. Jennie also maintains that the concepts of in loco parentis and/or de facto parent operate here to give her standing.

"In loco parentis" is Latin for "in the place of a parent." *State v. Sherman*, 266 S.W.3d 395, 406 (Tenn. 2008).[7] One may be classified as in loco parentis for a limited time

---

[6]This is why the legislature authorized the Tennessee Code Commission to include the Official Comments to the uniform state law in the Tennessee Code. Tenn. Code Ann. § 36-6-204. We also note that the UCCJEA replaced the Uniform Child Custody Jurisdiction Act, which was held by this court as "designed and intended to resolve custody disputes involving parties in different states, not different counties." *McElhaney v. Chipman*, 647 S.W.2d 643, 644 (Tenn. Ct. App. 1982).

[7] In *Hollis v. Thomas*, 303 S.W.2d 751, 760-61 (Tenn. Ct. App. 1957), the Court of Appeals stated:

'The term 'in loco parentis' has been defined as in the place of a parent; instead of a parent; charged, factitiously, with a parent's rights, duties, and responsibilities; more specifically, the relationship which a person assumes toward a child not his own, holding the child out to the world as a member of his family toward whom he owes the discharge of parental duties. It has been said that the accepted definition of a person in loco parentis is one who means to put himself in the situation of a lawful parent to the child with respect to the office and duty of making provision for it; one assuming the parental character and discharging parental duties; a person standing in loco parentis to a child is one who has put himself in

5

or a limited purpose, or one may possess the full responsibilities of a parent. *Id.* A person's status as in loco parentis is a matter of intent. *Id.*

As the *Hollis* court observed, the rights and liabilities of a person in loco parentis "may be enlarged or restricted by legislative enactment." *Hollis*, 303 S.W.2d at 431 (quoting 39 AM. JUR., Parent and Child, § 61, p. 698). The legislature has addressed visitation by stepparents in Tenn. Code Ann. § 36-6-303.[8] The legislature, however, has not chosen to address the situation presented in this case, where the parties have never been married[9] and the individual who is not biologically related to the child and has not adopted the child seeks visitation. We do not consider this an oversight, but rather a reflection of legislative satisfaction with the way the law has stood since *Thompson*. The Tennessee Supreme Court denied permission to appeal in *Thompson* in January, 2000.[10] Thirteen legislative sessions have come and gone with no change as to this aspect of the law. "While legislative inaction is generally irrelevant to the interpretation of existing statutes, the legislature's failure to 'express disapproval of a judicial construction of a statute is persuasive evidence of legislative adoption of the judicial construction.'" *Freeman Indus., LLC v. Eastman Chemical Co.*, 172 S.W.3d 512, 519 (Tenn. 2005) (quoting *Hamby v. McDaniel*, 559 S.W.2d 774, 776 (Tenn. 1977)). The legislature has not changed the definition of "parent," or "legal parent," nor has it altered the ability of a person in Jennie's situation to seek visitation since *Thompson* was decided.

---

the situation of a lawful parent by assuming the obligations incident to the parental relation, without going through the formalities necessary to a legal adoption.' 67 C.J.S. Parent and Child § 71, p. 803.

[8] Tenn. Code Ann. § 36-6-303 states:

(a) In a suit for annulment, divorce or separate maintenance where one (1) party is a stepparent to a minor child born to the other party, such stepparent may be granted reasonable visitation rights to such child during the child's minority by the court of competent jurisdiction upon a finding that such visitation rights would be in the best interests of the minor child and that such stepparent is actually providing or contributing towards the support of such child.

(b) Such decree shall remain within the control of the court and be subject to such changes or modification as the exigencies of the case require.

[9] Under Tennessee law, Jennifer and Jennie cannot legally marry in Tennessee. Tenn. Const. art. XI, § 18; Tenn. Code Ann. § 36-3-113.

[10] We also note an analogous case, *In the Matter of B.E.D.*, No. W2003-02026-COA-R3-JV, 2004 WL 572342, at *1 (Tenn. Ct. App. Mar. 22, 2004), in which the Court of Appeals held: "We find no authority granting an adult sibling visitation rights to a minor child."

6

Likewise, we find that Jennie's de facto parenthood argument lacks a legal foundation.

A parent has a fundamental right to the care, custody, and control of his or her child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174 (Tenn.1996); *see also* Tenn. Code Ann. § 34-1-102(a).  Jennifer is the adoptive, legal parent and, as such, has control over the individuals with whom Hayden spends time.

We find that Jennie, as the former non-married partner of Jennifer, has no biological or legal relationship with Hayden and, therefore, does not have standing to seek visitation.

Costs of appeal are assessed against the appellant, for which execution may issue if necessary.


_____
ANDY D. BENNETT, JUDGE