# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
November 20, 2014 Session

## IN RE: JOCELYN L.

**Appeal from the Circuit Court for Anderson County**
**No. B3LA214      William Lantrip, Chancellor[1]**

---

**No. E2013-02650-COA-R3-JV-FILED-DECEMBER 16, 2014**

---

The Tennessee Department of Children's Services ("DCS") filed a petition in the Juvenile Court for Anderson County ("the Juvenile Court") seeking to have the minor child Jocelyn L. ("the Child") found dependent and neglected. The Child's father, James L. ("Father"), was alleged to have sexually abused the Child. The Juvenile Court entered a restraining order against Father. While both Father and the Child's mother, Amanda L. ("Mother"), were named respondents in DCS's petition, Mother was named only so as to require her to uphold the restraining order against Father. After a hearing, the Juvenile Court found that the evidence on the allegations against Father did not rise to the level of clear and convincing. The Juvenile Court dismissed the petition. DCS did not appeal. Mother, however, appealed to the Circuit Court for Anderson County ("the Circuit Court") for a trial *de novo*. The Circuit Court found that Mother lacked standing to appeal and dismissed her appeal. Mother now appeals to this Court. We hold that Mother was not an aggrieved party by the Juvenile Court's order dismissing DCS's petition and, therefore, lacked standing to appeal to the Circuit Court. We affirm the judgment of the Circuit Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed;**
**Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

David A. Stuart, Clinton, Tennessee, for the appellant, Amanda L.

Ronald L. Grimm and Mary L. Abbott, Knoxville, Tennessee, for the appellee, James L.

---

[1]By interchange.

Robert E. Cooper, Jr., Attorney General and Reporter, and, Leslie Curry, Assistant Attorney General, for the appellee, the Tennessee Department of Children's Services.

## OPINION

## Background

In August 2012, DCS received a referral alleging that the Child was the victim of sexual abuse by Father. An investigation revealed that the Child had made the disclosures to Mother. At a forensic interview, the Child made disclosures of sexual abuse by Father.

Later in August 2012, DCS filed a petition for a restraining order in the Juvenile Court. Both Mother and Father were named as respondents in the petition. However, the sexual abuse allegations only pertained to Father. Mother was named as a respondent solely for the purpose of requiring Mother not to allow the Child to have any contact with Father.

The Juvenile Court entered an ex parte restraining order and ordered Father to be removed from the Child's home. Mother was ordered not to permit Father to have any contact with the Child. A guardian ad litem was appointed for the Child around this time. Mother and Father proceeded with separate counsel.

After several continuances, an adjudicatory hearing was conducted over four days in May and September 2013.[2] Following the hearing, the Juvenile Court entered an order dismissing DCS's petition. The Juvenile Court stated, in relevant part: "The Court finds that while [the] child made disclosures, the Court cannot afford weight to them due to great attachment between Child [and] Mother, such that the proof does not amount to clear [and] convincing evidence and DCS's petition is hereby dismissed."

Neither DCS nor the guardian ad litem appealed the Juvenile Court's decision. Mother, however, now represented by new private counsel, appealed to the Circuit Court for a trial *de novo*. In October 2013, DCS filed a motion to dismiss Mother's appeal claiming that Mother lacked standing to appeal the Juvenile Court's decision. Mother filed a response to DCS's motion to dismiss, arguing that she was, in fact, aggrieved by the Juvenile Court's decision and was entitled to appeal. Mother, after DCS filed its motion to dismiss, filed an answer and cross-claim in the Circuit Court purportedly to DCS's original petition and against Father.

---

[2]The record on appeal contains no transcript or statement of the evidence.

In October 2013, the Circuit Court held a hearing on DCS's motion to dismiss. The Circuit Court, based on the record and arguments of counsel, dismissed Mother's appeal, stating in relevant part: "That the mother does not having [sic] standing to appeal the Department's Petition from the juvenile court. Therefore, her appeal, and all subsequent pleadings filed in conformance therewith, are hereby dismissed." Mother timely filed an appeal to this Court.

## Discussion

Although not stated exactly as such, Mother raises the following issue on appeal: whether the Circuit Court erred in dismissing for lack of standing Mother's appeal for trial *de novo* from the Juvenile Court's order dismissing DCS's petition.

Tenn. Code Ann. § 37-1-159 (2014) addresses the issue of jurisdiction for appeals from juvenile court and states, in pertinent part, as follows:

> (a) The juvenile court shall be a court of record; and any appeal from any final order or judgment in [a] . . . dependent and neglect proceeding, filed under this chapter, may be made to the circuit court that shall hear the testimony of witnesses and try the case de novo. . . .
>
> (g) Appeals in all other civil matters heard by the juvenile court shall be governed by the Tennessee Rules of Appellate Procedure.

*See also* Tenn. R. Juv. P. 36(a) and (d) (providing a procedure for de novo appeals to circuit court in accordance with Tenn. Code Ann. § 37-1-159(a)).

This appeal presents a question of whether a party, Mother, has standing, and thus is a question of law. *In re Estate of Smallman*, 398 S.W.3d 134, 148 (Tenn. 2013). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

Standing is a judge-made doctrine by which a court determines whether a party should be permitted to pursue a claim. *City of New Johnsonville v. Handley,* No. M2003-00549-COA-R3-CV, 2005 WL 1981810, at *15 n. 23 (Tenn. Ct. App. Aug. 16, 2005), *Rule 11 appl. perm. appeal denied February 6, 2006.* We have stated that the basis for this decision is "whether the plaintiff has alleged a sufficiently personal stake in the outcome of the litigation to warrant a judicial intervention." *Wood v. Metro. Nashville & Davidson County Gov't*, 196 S.W.3d 152, 157 (Tenn. Ct. App. 2005) In *Petty v. Daimler/Chrysler*

*Corp.*, 91 S.W.3d 765, 767 (Tenn. Ct. App. 2002), we set forth three indispensable elements which a party must demonstrate in order to establish standing to prosecute a cause of action:

> First, the party must demonstrate that it has suffered an injury which is "distinct and palpable," . . . and not conjectural or hypothetical. . . . Second, the party must establish a causal connection between that injury and the conduct of which he complains. . . . Third, it must be likely that a favorable decision will redress that injury. (citations omitted.)

There also is the legal requirement that a party must be aggrieved by the trial court's decision in order to have standing to appeal the trial court's decision. This Court has discussed the status of being aggrieved as follows:

> Standing limits access to the courts to those who have a justiciable claim. *Thomas v. Tenn. Dep't of Transp.,* No. M2010-01925-COA-R3-CV, 2011 WL 3433015, at *6; 2011 Tenn. App. LEXIS 426, at * 18-19 (Tenn. Ct. App. Aug. 5, 2011); *Wood v. Metro. Nashville & Davidson Co. Gov't,* 196 S.W.3d 152, 157 (Tenn. Ct. App. 2005); *Metro. Air Research Testing Auth., Inc. v. Metro. Gov't of Nashville & Davidson Co.*, 842 S.W.2d 611, 615 (Tenn. Ct. App. 1992). In order to have standing to appeal a trial court's order, a party must be "aggrieved" by the order. *Clark v. Perry*, No. 02A01-9704-CH-00080, 1998 WL 34190562, at *7; 1998 Tenn. App. LEXIS 194, at * 19 (Tenn. Ct. App. Mar. 19, 1998) (citing *Ray v. Trapp,* 609 S.W.2d 508, 512 (Tenn. 1980); *Koontz v. Epperson Elec. Co.*, 643 S.W.2d 333, 335 (Tenn. Ct. App.1982)). In the legal sense, "[a] party is 'aggrieved' when he has an interest recognized by law which is injuriously affected by the order...." *Clark*, 1998 WL 34190562, at *7; 1998 Tenn. App. LEXIS 194, at *19 (citing *Koontz*, 643 S.W.2d at 335).

*In re: Montana R. T.*, No. E2011-00755-COA-R3-PT, 2012 WL 2499498, at *5 (Tenn. Ct. App. June 29, 2012), *no appl. perm. appeal filed*.

This Court addressed standing and aggrieved status in another opinion, stating:

> Only a party aggrieved by the trial court's order may appeal and obtain review of that order. *Ray v. Trapp*, 609 S.W.2d 508, 512 (Tenn. 1980); *Koontz v. Epperson Elec. Co.*, 643 S.W.2d 333, 335 (Tenn. App.1982). A party is "aggrieved" when he has an interest recognized by law which is injuriously affected by the order, or when his property rights or personal interests are directly affected by operation of the order. *Koontz*, 643 S.W.2d at 335. As a

general rule, therefore, a party lacks standing to appeal an order entered against a co-party who has elected not to appeal that order. *See, e.g., Ray v. Trapp*, 609 S.W.2d at 511-12; *Ryan v. Stanger Inv. Co.*, 620 S.W.2d 505, 508 (Tenn. App. 1981).

*Clark v. Perry*, No. 02A01-9704-CH-00080, 1998 WL 34190562, at *7 (Tenn. Ct. App. March 19, 1998), *no appl. perm. appeal filed*.

We now address Mother's sole issue on appeal of whether the Circuit Court erred in dismissing for lack of standing Mother's appeal to the Circuit Court for trial *de novo* from the Juvenile Court's order dismissing DCS's petition. While cognizant of Mother's entire brief, we reproduce the following segment of Mother's brief to illustrate the crux of her argument:

Several features contained within the record on appeal in this cause illustrate that the mother was aggrieved by the judgment of the juvenile court. For example, after the juvenile court modified its no contact order to allow the father supervised visitation, subject to certain conditions, mother filed motion to suspend the father's visitation, which was denied. The other proceedings prior to the adjudicatory hearing further illustrate the mother's adversarial position with regard to the father. Perhaps most revealing, in dismissing the state's original petition in this cause, the juvenile court expressly refused to give any weight to the child's disclosures of sexual abuse "due to great attachment between child & mother . . . ." To put it mildly, the mother was aggrieved by this judgment, and it is respectfully submitted any natural parent and legal guardian with a "great attachment" to their minor child would be aggrieved by such a judgment.

(Citations omitted) (footnote omitted). DCS and Father, for their part, contend that Mother was not an aggrieved party with standing to appeal the Juvenile Court's decision. DCS and Father contend, rather, that Mother never aligned herself with DCS in the Juvenile Court proceedings and that, furthermore, Mother's rights were not impaired or affected by the Juvenile Court's decision.

To resolve this issue, we must look to the record on appeal. Mother points to her having filed a motion in the Juvenile Court to suspend Father's supervised visitation. Indeed, this motion, and a proposed order with the juvenile judge's signature line marked "entry denied," are contained in the record. These documents, however, do not reveal to us what Mother's posture was as to the central question in the Juvenile Court proceedings: did Father sexually abuse the Child. Perhaps Mother by that point agreed with DCS's position,

or perhaps Mother simply was waiting to see how the matter ultimately resolved. We may not speculate or assume. We cannot read anything into Mother's effort to stop Father's supervised visitation because we cannot conclusively determine from this record what Mother's position was in the Juvenile Court action, apart from being a named respondent in DCS's petition. Mother's motion to suspend Father's visitation rights, alleged by Mother to be a major piece of evidence supporting her aggrieved status, does not in itself support her stance that she was an aggrieved party.

Mother also points to the Juvenile Court's language in its order dismissing DCS's petition wherein it cited the great attachment between the Child and Mother in its reasoning for not giving weight to the Child's disclosures. Here, we believe it is important to distinguish between the different uses of the word aggrieved. Random House Webster's College Dictionary (2d ed. 2001) defines aggrieved as an adjective meaning "wronged or injured," "deprived of legal rights or claims," or "troubled, worried." The same dictionary defines the verb aggrieve as "to oppress or wrong grievously" or "to afflict with pain, anxiety, etc." It appears that Mother is conflating, at least in part, the common meaning of the term aggrieve with its legal counterpart. As outlined in the case law above, to be an aggrieved party means to have one's legal interests injured or to have personal or property rights directly affected by operation of the trial court's order. Mother understandably may be greatly *offended* by the Juvenile Court's citing the great attachment between Mother and the Child for its not giving weight to the Child's disclosures. In that limited, common use of the term, Mother perhaps may be said to be "aggrieved." Nevertheless, the issue before us is whether Mother *legally* was an aggrieved party for purposes of having standing to appeal.

From our review of the record on appeal, we do not find sufficient evidence that Mother sought to align her interests directly with those of DCS in the Juvenile Court proceedings. It is true that after the Juvenile Court ruled, Mother certainly made her position plain to the Circuit Court. Even in the Circuit Court, however, Mother did not file her answer and cross-claim adopting what had been DCS's position in the Juvenile Court until after DCS filed its motion to dismiss. At that time in the Circuit Court, DCS's position had, in fact, changed and DCS was asking that Mother's appeal be dismissed for lack of standing after noting that DCS did not appeal the Juvenile Court's order dismissing DCS's original petition. We, however, are constrained to look at the period and record leading up to and including the Juvenile Court's decision in our deciding whether Mother was an aggrieved party so as to have standing to appeal the Juvenile Court's decision. At the time of the Juvenile Court's order dismissing DCS's petition, the record does not show that Mother had aligned herself with DCS's position. The record contains no motion, complaint, petition or other document from Mother during the Juvenile Court proceedings reflecting that she was

affirmatively aligning herself with DCS. The only thing we know for sure is that Mother was a named respondent in DCS's petition, albeit for a limited purpose.

In addition to the aforementioned, we further note that Mother's rights were not impaired by the Juvenile Court's dismissal of DCS's petition. Mother simply was released from the obligations of the restraining order. Mother lost neither custody nor parental rights to the Child. Mother has not forfeited the right to raise the factual allegations contained in the DCS petition in, for example, any divorce or custody proceedings. The Juvenile Court's order of dismissal neither injuriously affected any of Mother's interests recognized by law nor did that order directly affect any property rights or personal interests of Mother. Having lost nothing and having never aligned herself directly with DCS's position at the relevant times, Mother was not an aggrieved party by the Juvenile Court's order. Therefore, Mother lacked standing to appeal the Juvenile Court's order dismissing DCS's petition. We affirm the judgment of the Circuit Court.

## Conclusion

The judgment of the Circuit Court is affirmed, and this cause is remanded to the Circuit Court for collection of the costs below. The costs on appeal are assessed against the Appellant, Amanda L., and her surety, if any.

_____
D. MICHAEL SWINEY, JUDGE