IN THE SUPREME COURT OF TENNESSEE
AT JACKSON
April 1, 2008 Session

## STATE OF TENNESSEE v. ROBERT JONATHAN HARRISON

**Appeal by Permission from the Court of Criminal Appeals**
**Circuit Court for Chester County**
**No. 05-323      Roy B. Morgan, Jr., Judge**

_____

**No. W2006-00483-SC-R11-CD - Filed October 21, 2008**

_____

This appeal involves the procedure for discovering the records of a clinical psychologist whom the defendant intends to call as an expert witness at a pretrial competency hearing in a criminal case. After the defendant filed a petition in the Circuit Court for Chester County requesting to be declared incompetent to stand trial, the State obtained a judicial subpoena under Tenn. Code Ann. § 40-17-123 (2006) directing the defendant's psychologist to produce "[a]ny and all records" related to his examination of the defendant. The trial court declined to quash the subpoena but granted the defendant an interlocutory appeal to the Court of Criminal Appeals. The intermediate appellate court held that the trial court erred by issuing a subpoena under Tenn. Code Ann. § 40-17-123 but, characterizing the competency hearing as "in the nature of a civil proceeding," ordered the production of the materials sought in accordance with Tenn. R. Civ. P. 35.02. *State v. Harrison*, No. W2006-00483-CCA-R9-CD, 2007 WL 906730, at *4 (Tenn. Crim. App. Mar. 2, 2007). We granted the defendant's application for permission to appeal to address the application of Tenn. R. Civ. P. 35.02 to pretrial competency hearings in criminal cases. We concur with the Court of Criminal Appeals' conclusions that the trial court erred by granting the judicial subpoena and that the State is entitled to discover the report of the expert testifying for the defendant in the competency hearing. However, we have also determined that Tenn. R. Civ. P. 35.02 does not apply to pretrial competency hearings in criminal cases. Exercising our inherent supervisory authority over Tennessee's judicial system, we adopt a temporary procedure for the disclosure and use of evidence relating to competency to stand trial in criminal cases.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals Affirmed in Part; Reversed in Part; and Remanded**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which, JANICE M. HOLDER, C.J., WILLIAM M. BARKER, CORNELIA A. CLARK, and GARY R. WADE, JJ., joined.

Kandi Kelley, Assistant Public Defender (on appeal); and George Morton Googe, District Public Defender, and Joseph T. Howell, Assistant Public Defender (at trial), Jackson, Tennessee, for the appellant, Robert Jonathan Harrison.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; Rachel E. Willis, Assistant Attorney General (on appeal); and James G. Woodall, District Attorney General, and Jody S. Pickens, Assistant District Attorney General (at trial), Jackson, Tennessee, for the appellee, State of Tennessee.

**OPINION**

**I.**

In June 2005, a grand jury in Chester County indicted Robert Jonathan Harrison on three counts of rape, one count of rape of a child, one count of attempt to commit rape, and one count of incest. Several months later, in August 2005, Mr. Harrison filed a standard motion for discovery from the State under Tenn. R. Crim. P. 16(a). After providing the requested discovery, the State requested reciprocal disclosure from Mr. Harrison under Tenn. R. Crim. P. 16(b).

Mr. Harrison's lawyer requested a forensic psychological examination for his client in accordance with Tenn. Code Ann. § 33-7-301(a)(1) (2007). A report of this examination, filed with the trial court on December 19, 2005, concluded that Mr. Harrison was competent to stand trial and that "a defense of insanity cannot be supported." Following the receipt of this report, Mr. Harrison's lawyer obtained funding for the services of Dr. Dennis Wilson, a private clinical psychologist practicing in Jackson, Tennessee.[1]

On January 11, 2006, Mr. Harrison filed a petition requesting the trial court to declare him incompetent to stand trial. Attached to his petition was a summary report of Dr. Wilson's evaluation and conclusions dated January 5, 2006. While Dr. Wilson agreed that his examination would not support an insanity defense, he concluded that Mr. Harrison was not competent to stand trial because he did not understand the functions of the prosecuting attorney, the judge, or the jury. He also concluded that Mr. Harrison appeared to be "marginally capable of assisting his attorney in his own defense."

On February 3, 2006, the State obtained a judicial subpoena in accordance with Tenn. Code Ann. § 40-17-123 (2006), directing Dr. Wilson to produce "[a]ny and all records" retained by him related to his psychological evaluation of Mr. Harrison. On February 9, 2006, Mr. Harrison, joined later by Dr. Wilson, moved to quash the subpoena. The trial court denied the motion to quash on February 27, 2006 and, on March 6, 2006, entered an order granting Mr. Harrison permission to seek an interlocutory appeal. The court also directed that Dr. Wilson's records be placed under seal pending the resolution of the interlocutory appeal.

On April 24, 2006, the Court of Criminal Appeals granted Mr. Harrison permission to appeal. Before the Court of Criminal Appeals, Mr. Harrison argued (1) that judicial subpoenas under Tenn.

---

[1]The request and order for funding of Dr. Wilson's services were obtained under seal in accordance with Tenn. Sup. Ct. R. 13 § 5(a)(1).

Code Ann. § 40-17-123 were not intended to enable the State to compel the production of the confidential records of an expert retained by the defense in a criminal case and (2) that the reciprocal discovery requirements in Tenn. R. Crim. P. 16(b) did not require the production of Dr. Wilson's records because he did not intend to call Dr. Wilson as a witness at trial or to rely on Dr. Wilson's records as evidence in his case-in-chief at trial. The State responded that the trial court properly granted the subpoena and that Mr. Harrison lacked standing to contest it.

The Court of Criminal Appeals filed its opinion on March 2, 2007. *State v. Harrison*, No. W2006-00483-CCA-R9-CD, 2007 WL 906730, at *1 (Tenn. Crim. App. Mar. 2, 2007). The court did not address the State's assertion that Mr. Harrison lacked standing to quash the judicial subpoena. However, it found that the State was not authorized to obtain a judicial subpoena because neither a district attorney general nor an assistant district attorney general is a "law enforcement officer" within the meaning of Tenn. Code Ann. § 40-17-123(a). *State v. Harrison*, 2007 WL 906730, at *3.

Even though the Court of Criminal Appeals had decided the only issue presented on the interlocutory appeal – the application of judicial subpoenas under Tenn. Code Ann. § 40-17-123 to competency proceedings like this one – the court proceeded, on its own and without further briefing from the parties, to fashion a discovery procedure applicable to proceedings regarding the competency of a defendant in a criminal case to stand trial. Based on its belief that a proceeding to determine competency to stand trial was "in the nature of a civil proceeding," the Court of Criminal Appeals patterned its discovery procedure after Tenn. R. Civ. P. 35.02. *State v. Harrison*, 2007 WL 906730, at *4. We granted Mr. Harrison's application for permission to appeal to address the application of Tenn. R. Civ. P. 35.02 to proceedings to establish a defendant's competency to stand trial in a criminal case.

## II.

As a preliminary matter, the State asserts that Mr. Harrison lacks standing to challenge the judicial subpoena issued to Dr. Wilson and that both the trial court and the Court of Criminal Appeals erred by granting Mr. Harrison's Tenn. R. App. P. 9 application for permission to appeal. We find little merit in either claim.

## A.

The State's standing argument is a very narrow, literal one. It is based on Tenn. Code Ann. § 40-17-123(k) which entitles "person[s] to whom a subpoena is directed" to move to quash or to limit a judicial subpoena by showing that compliance would be unreasonable or oppressive. The State asserts that Mr. Harrison does not have standing to challenge the subpoena because he was not the one to whom the subpoena was directed. That person was Dr. Wilson.

The State did not question Mr. Harrison's standing to challenge the judicial subpoena in the proceedings before the trial court. The trial court raised this question on its own motion during the

February 24, 2006 hearing and based its decision to deny the motion to quash, at least in part, on the fact that the subpoena had not been directed to Mr. Harrison. On March 8, 2006, Dr. Wilson, acting on his own behalf, filed a document entitled "Notice of Adoption" in the trial court stating that "he hereby joins and adopts in the Motion to Quash the Judicial Subpoena filed by Robert Jonathan Harrison, on February 9, 2006."[2] Unfortunately, despite the fact that the issue of Mr. Harrison's standing to challenge the subpoena was squarely raised in the State's brief, the Court of Criminal Appeals did not address the issue in its opinion.

It would, of course, have been better practice for Mr. Harrison to have joined Dr. Wilson in his motion to quash the judicial subpoena. Despite this anomaly, the record is sufficiently complete to enable us to address the standing issue.

The doctrine of standing is used to determine whether a particular plaintiff is entitled to judicial relief. *Knierim v. Leatherwood*, 542 S.W.2d 806, 808 (Tenn. 1976). It is the principle that courts use to determine whether a party has a sufficiently personal stake in a matter at issue to warrant a judicial resolution of the dispute. *SunTrust Bank, Nashville v. Johnson*, 46 S.W.3d 216, 222 (Tenn. Ct. App. 2000). Persons whose rights or interests have not been affected have no standing and are, therefore, not entitled to judicial relief. *Lynch v. City of Jellico*, 205 S.W.3d 384, 395 (Tenn. 2006).

"The sort of distinct and palpable injury that will create standing must be an injury to a recognized legal right or interest." *Wood v. Metro. Gov't of Nashville and Davidson County*, 196 S.W.3d 152, 158 (Tenn Ct. App. 2005). Such a legal right or interest may, but not must, be created or defined by statute. "[I]n cases where a party is seeking to vindicate a statutory right of interest, the doctrine of standing requires the party to demonstrate that its claim falls within the zone of interests protected or regulated by the statute in question." *Wood v. Metro. Gov't of Nashville and Davidson County*, 196 S.W.3d at 158 (citing *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 20 (1998)).

Tenn. Code Ann. § 40-17-123(k) provides a statutory basis for custodians of records to challenge a judicial subpoena on the ground that compliance with the subpoena would be unreasonable or oppressive. While the statute clearly prescribes a basis for custodians of records to challenge a judicial subpoena, it does not purport to prevent or to restrict the rights of other persons with a demonstrable legal interest in the subpoenaed records to challenge the subpoena on grounds other than the unreasonableness or oppressiveness of complying with the subpoena.

Mr. Harrison is not challenging the judicial subpoena in this case on the ground that complying with it would be unreasonable or oppressive. He is challenging it on the grounds (1) that

---

[2]On March 9, 2006, the trial court entered an order denying the motion to quash filed by Dr. Wilson. While acknowledging that Dr. Wilson had standing to file the motion to quash, the court reaffirmed its earlier ruling that the records were subject to discovery through a judicial subpoena. Dr. Wilson has not sought review of the denial of his motion to quash.

the person seeking the subpoena – a district attorney general or an assistant district attorney general – is not entitled to obtain the subpoena and (2) that the subpoena seeks information to which the State is not entitled. Thus, the grounds of Mr. Harrison's motion to quash go beyond the grounds listed in Tenn. Code Ann. § 40-17-123(k).

The State asserts that Mr. Harrison does not have standing to challenge the subpoena issued to Dr. Wilson. The State relies on what it characterizes as "the long-standing rule that only one to whom a subpoena is directed has standing to challenge the subpoena," citing *State v. McClain*, No. E2004-01182-CCA-R3-CD, 2005 WL 1384877, at *3 (Tenn. Crim. App. June 13, 2005) (No Tenn. R. App. P. 11 application filed); *State v. Hart*, No. E2003-00053-CCA-R3-CD, 2003 WL 22532500, at *14 (Tenn. Crim. App. Nov. 7, 2003), *perm. app. denied* (Tenn. Mar. 22, 2004); *State v. Fears*, 659 S.W.2d 370, 376 (Tenn. Crim. App. 1983); and *Sheets v. Hathcock*, 528 S.W.2d 47, 51 (Tenn. Crim. App. 1975). We have determined that this "rule," first stated without citation to any authority by Judge Charles Galbreath in *Sheets v. Hathcock*, is much too broad.

The categorical holding in *Sheets v. Hathcock* that a person cannot challenge a subpoena issued to a third party is incorrect because it fails to recognize that the objecting party may have a recognized, legally protectable interest with regard to materials in the hands of a third party. A person who does not have a legally protectable interest in subpoenaed materials has no standing to challenge either the form of a subpoena issued to a third party or the manner in which the subpoena was issued. However, the prevailing rule today is that a person who has a personal right, privilege, or proprietary interest in materials subject to a third-party subpoena has standing to challenge the subpoena. *Gravel v. United States*, 408 U.S. 606, 628-29 (1972) (implicitly recognizing a United States Senator's standing by permitting him to move to quash a subpoena issued to an assistant); *United States v. Raineri*, 670 F.2d 702, 712 (7th Cir. 1982); *Washington v. Thurgood Marshall Acad.*, 230 F.R.D. 18, 21 (D.D.C. 2005); *United States v. Nachamie*, 91 F. Supp. 2d 552, 558-61 (S.D.N.Y. 2000); *Windsor v. Martindale*, 175 F.R.D. 665, 668 (D. Colo. 1997) (recognizing privilege and privacy as conferring standing); *Oman v. State*, 737 N.E.2d 1131, 1135 (Ind. 2000); Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2459, at 435-36 (3d ed. 2008).

We adopt this view regarding standing to challenge third-party subpoenas and incorporate it into the law of Tennessee. A person has standing to challenge a subpoena issued to a third party, as long as that person asserts a personal right, privilege, or proprietary interest in the materials being sought by the subpoena. We expressly overrule *Sheets v. Hathcock* and its progeny to the extent that they conflict with this holding. However, the primary focus of a standing inquiry is on the party, not on the likelihood that the party will succeed on the merits of its claim. *Am. Civil Liberties Union of Tenn. v. Darnell*, 195 S.W.3d 612, 620 (Tenn. 2006); *Metro. Air Research Testing Auth., Inc. v. Metro. Gov't of Nashville and Davidson County*, 842 S.W.2d 611, 615 (Tenn. Ct. App. 1992). Thus, concluding that a person has standing to challenge a subpoena issued to a third party does not mean that the party's challenge will ultimately be successful. That decision will ultimately be made based on the substantive merits of the challenge to the subpoena.

In this case, there is no question that Mr. Harrison has a legitimate personal interest in the report and records of the clinical psychologist he retained to ascertain whether he is competent to stand trial and whether he could viably assert an insanity defense. There is also no question that Mr. Harrison's interests would be adversely affected if the trial court erroneously ordered Dr. Wilson to turn his records over to the State. Accordingly, we find that Mr. Harrison's interests in the records being sought by the State in this case afforded him standing on his own to challenge the judicial subpoena on both substantive and procedural grounds.[3] We also find that any material shortcoming with regard to statutory standing under Tenn. Code Ann. § 40-17-123(k) was cured when Dr. Wilson belatedly "adopted" Mr. Harrison's motion to quash.

**B.**

The State also asserts that both the trial court and the Court of Criminal Appeals erred by granting Mr. Harrison's application for an interlocutory appeal. First, it asserts that the order denying the motion to quash was a final order that could have been appealed as of right under Tenn. R. App. P. 3. Sensing the insubstantiality of this argument, the State also argues in an entirely conclusory fashion that an interlocutory appeal was unnecessary to prevent irreparable injury or to prevent needless litigation and that the law on this particular point is already uniform and requires no clarification.

We need not tarry long with the State's argument that the order denying Mr. Harrison's motion to quash was a final order. While an order denying a motion to quash a judicial subpoena could, in some circumstances, be a final order, those circumstances are not present in this case. The judicial subpoena involved here was obtained for the purpose of discovery in the context of an ongoing criminal prosecution of an already indicted defendant. It was part of the criminal prosecution, and the order denying the motion to quash, like other orders involving the discovery or admissibility of evidence, did not conclude the prosecution. Therefore, the order denying Mr. Harrison's motion to quash was not final, and Tenn. R. App. P. 9 was an appropriate vehicle for seeking judicial review of the order.

The trial court explicitly found that its decision in this case, if erroneous, could result in irreparable injury to Mr. Harrison. It noted that the records sought by the judicial subpoena were confidential attorney work product and that if they were released, no effective method existed to correct the situation should the appellate court determine that release was improper. The trial court also found that interlocutory review was necessary to develop a uniform body of law, noting the lack of clear authority for issuance of a judicial subpoena under these circumstances. The Court of

---

[3]In his procedural attack, Mr. Harrison essentially claims that the subpoena is facially invalid because the assistant district attorney general did not have the authority under Tenn. Code Ann. § 40-17-123(a) to obtain the subpoena. We are not presented with the issue of standing to challenge procedural irregularities in the subpoena itself or in the manner of its service. However, we note that, in the context of a contempt conviction for preventing the appearance of a witness subpoenaed to appear before a grand jury, we have held that a criminal defendant may not challenge the validity of the subpoena issued to a third party on the grounds of alleged technical defects in the subpoena itself or in the manner of its service. *See Scott v. State*, 109 Tenn. 390, 393, 71 S.W. 824, 825 (1902).

Criminal Appeals effectively agreed with these conclusions by granting Mr. Harrison permission to appeal.

Notwithstanding our reluctance to grant interlocutory appeals in criminal cases, *State v. Gilley*, 173 S.W.3d 1, 5 (Tenn. 2005), we have not hesitated to approve interlocutory appeals in criminal cases to address issues for which there is no other procedure for review specifically provided. *See Reid v. State*, 197 S.W.3d 694, 699 (Tenn. 2006) (procedure for determining competency to proceed in a post-conviction action); *State v. Reid*, 981 S.W.2d 166, 169-70 (Tenn. 1998) (notice, examination, and disclosure requirements where a defendant intends to introduce expert testimony relating to the mental condition of the defendant as mitigation proof during the sentencing phase of a capital trial). The issue of which procedure should govern discovery of psychological evidence relating to pretrial competency determinations in criminal cases satisfies the criteria for an interlocutory appeal under Tenn. R. App. P. 9(a). Therefore, we conclude that the lower courts did not err in granting Mr. Harrison's request for interlocutory review.

### III.

The ability of a district attorney general or an assistant district attorney general to use a judicial subpoena under Tenn. Code Ann. § 40-17-123(a) as a discovery device in an ongoing criminal proceeding is an issue of first impression. The statute provides:

> The following procedure shall be employed when a law enforcement officer, as defined in § 39-11-106, seeks to obtain a subpoena for the production of books, papers, records, documents, tangible things, or information and data electronically stored for the purpose of establishing, investigating or gathering evidence for the prosecution of a criminal offense.

Tenn. Code Ann. § 40-17-123(a). The question before us is whether a district attorney general or an assistant district attorney general is a "law enforcement officer" for the purpose of this statute.

Tennessee's statutes reflect the traditional distinction between law enforcement officers and prosecutors. As defined in Tenn. Code Ann. § 39-11-106(a)(21) (2006), a "law enforcement officer" is

> an officer, employee or agent of government who has a duty imposed by law to:
> (A) Maintain public order; or
> (B) Make arrests for offenses, whether that duty extends to all offenses or is limited to specific offenses; and
> (C) Investigate the commission or suspected commission of offenses.

While the Code contains no similar definition for prosecutors, the duties of district attorneys general defined in Tenn. Code Ann. § 8-7-103(1) (2002) include the duty to "prosecute in the courts of the district all violations of the state criminal statutes and perform all prosecutorial functions attendant thereto." Maintaining public order, making arrests, and investigating crimes are not among the district attorney general's duties explicitly listed in Tenn. Code Ann. § 8-7-103.

Other statutes and rules also differentiate between prosecutors and law enforcement officers. Tenn. Code Ann. § 8-7-110(a) (Supp. 2007) provides that both "law enforcement officer[s]" and "assistant district attorney[s] general" assigned to multi-district task forces shall have the same rights and powers that they have in their own district. In capital cases, there are separate aggravating circumstances for murder of a "law enforcement officer" and murder of a "district attorney general" or an "assistant district attorney general." Tenn. Code Ann. § 39-13-204(i)(9), (10) (2006). Tenn. Code Ann. § 37-1-612(c)(1), (2) (Supp. 2007), the statute governing access to confidential child abuse records, draws a similar distinction between a "law enforcement agency" and the "district attorney general." Similarly, Tenn. R. Crim. P. 16(a)(2) distinguishes between documents prepared by the "district attorney general" and documents prepared by "other state agents or law enforcement officers."

Invoking the district attorney general's broad discretion to address matters of public interest,[4] the State asserts that a district attorney general's statutory duties fall within the rubric of maintaining public order for the purpose of Tenn. Code Ann. § 39-11-106(a)(21)(A). The State also asserts that the assistant district attorney general was engaging in an "investigation" under Tenn. Code Ann. § 39-11-106(a)(21)(C) when he obtained the judicial subpoena in this case. We find little merit to either claim for two reasons. First, while a district attorney general's performance of his or her prosecutorial duties may assist in maintaining public order by promoting respect for and compliance with the law, district attorneys general are not directly tasked with the responsibility to maintain public order. Second, for the purposes of Tenn. Code Ann. § 39-11-106(a)(21)(C), an investigation must be one involving the "commission or suspected commission of [an] offense[]." The judicial subpoena in this case was not issued for this purpose but rather to discover the records of the clinical psychologist who examined Mr. Harrison to determine whether he was competent to stand trial.

The Tennessee General Assembly enacted Tenn. Code Ann. § 40-17-123 as part of the Terrorism Prevention and Response Act of 2002.[5] Even though the terms of the Act do not expressly limit its application to cases involving terrorism, we fail to discern any intent in the Act's language or legislative history to supplant the existing discovery rules in criminal cases with judicial subpoenas. In fact, the Act itself disavows such an intent in Tenn. Code Ann. § 40-17-123(i) which states that "[n]o subpoena for the production of documentary evidence authorized by this section

_____

[4]*See generally State ex rel. Swann v. Pack*, 527 S.W.2d 99, 112 (Tenn. 1975) (upholding the power of a district attorney general to file public nuisance actions on the ground that district attorneys general have a duty "to investigate, prosecute and insure against all infractions of the public peace and all acts which are against the peace and dignity of the state").

[5]Act of June 29, 2002, ch. 849, § 11, 2002 Tenn. Pub. Acts 2260, 2272-74.

shall be directed to, or served upon, any defendant, or that defendant's counsel, to a criminal action in this state." Seeking discovery from an expert witness retained by an indicted defendant's lawyer constitutes a prosecutorial act, not an investigative one. While the materials in this case were not in the physical possession of either Mr. Harrison or his lawyer, the issuance of the judicial subpoena amounted to an end-run around Tenn. Code Ann. § 40-17-123(i)'s proscriptions.

For these reasons, we have determined that neither district attorneys general nor assistant district attorneys general are acting as law enforcement officers for the purpose of Tenn. Code Ann. § 40-17-123(a) when they seek discovery from an indicted defendant or experts retained by the defendant in an ongoing criminal prosecution.[6] Accordingly, the Court of Criminal Appeals correctly concluded that the trial court should have quashed the judicial subpoena at issue in this case because the assistant district attorney general did not have the authority under Tenn. Code Ann. § 40-17-123(a) to obtain it.

## IV.

The final issue involves the procedure crafted by the Court of Criminal Appeals for discovering the materials prepared by psychological experts retained by a defendant to ascertain whether the defendant is competent to stand trial.[7] Mr. Harrison asserts that the Court of Criminal Appeals erred by basing its procedure on Tenn. R. Civ. P. 35.02. The State asserts that the procedure provides a permissible method for discovery in pretrial competency proceedings. We have determined that the Court of Criminal Appeals' procedure does not appropriately balance the interests at stake when determining whether a defendant is competent to stand trial.

## A.

Both the Fourteenth Amendment to the United States Constitution and article I, section 8 of the Tennessee Constitution prohibit trying persons who are not mentally competent. *Pate v. Robinson*, 383 U.S. 375, 378 (1966); *State v. Blackstock*, 19 S.W.3d 200, 205 (Tenn. 2000). To be found competent to stand trial, a criminal defendant must have "the capacity to understand the nature

---

[6]To the extent that it is contrary to this opinion, we reject as imprecise the Court of Criminal Appeals' blanket characterization of the district attorney general as the "chief law enforcement officer of each judicial district" in *McLellan v. Crockett*, Washington Ch. No. 260, 1990 WL 148, at *2 (Tenn. Crim. App. Jan. 4, 1990), *perm. app. denied* (Tenn. Mar. 26, 1990).

[7]The Court of Criminal Appeals could have limited its decision to addressing the issue presented by this Tenn. R. App. P. 9 appeal – whether the district attorney general may use a judicial subpoena under Tenn. Code Ann. § 40-17-123(a) as a discovery device in an ongoing criminal proceeding to determine whether a defendant is competent to stand trial. After determining that no rule or statute prescribed the discovery procedures, the court could have then remanded the case to the trial court. If the State persisted in its efforts to discover Dr. Wilson's records, the trial court could then have exercised its inherent power to adopt appropriate rules of procedure to address the issue. *See State v. Reid*, 981 S.W.2d at 170. Perhaps in an effort to stave off further litigation, the Court of Criminal Appeals chose to exceed the parameters of the interlocutory appeal "for purposes of clarification."

and object of the proceedings against him [or her], to consult with counsel and to assist in preparing his [or her] defense." *State v. Black*, 815 S.W.2d 166, 174 (Tenn. 1991).

In Tennessee, either the defendant, the State, or the trial court may request a psychological examination to determine whether a defendant is competent to stand trial or to ascertain the defendant's mental condition when the crime was committed. Tenn. Code Ann. § 33-7-301(a)(1) (2007). In addition to this evaluation, both the State and the defendant may obtain their own experts to address these questions. If any of these experts determine that the defendant is not competent to stand trial, the defendant may, as Mr. Harrison did in this case, request the trial court to declare that he or she is not competent to stand trial. In this circumstance, the defendant bears the burden of establishing his or her incompetency by a preponderance of the evidence. *State v. Reid*, 164 S.W.3d 286, 307 (Tenn. 2005).

If the issue of the defendant's competency to stand trial is properly raised, the trial court must conduct a hearing to determine whether the defendant has the capacity to understand the nature and purpose of the proceeding, to consult with counsel, and to otherwise assist in preparing his or her defense. This hearing does not address the defendant's guilt or innocence or the defendant's mental condition when the offense was committed. *State v. Black*, 815 S.W.2d at 174.

**B.**

We must first determine whether any existing statutes or rules explicitly govern the procedure for determining whether a defendant is competent to stand trial. We have already determined that the judicial subpoenas under Tenn. Code Ann. § 40-17-123(a) cannot be used in this context, and neither the State nor Mr. Harrison has cited us to any other statutes that could be applicable. Because our independent research has likewise not identified any such statute, we conclude that there is presently no Tennessee statute defining the procedure for pretrial competency hearings.

The Tennessee Rules of Criminal Procedure contain both general and specific discovery provisions. However, the general discovery provisions in Tenn. R. Crim. P. 16 applicable to the discovery of evidence that the defendant intends to introduce "at trial"[8] do not, by their own terms, apply to pretrial competency hearings. The term "at trial" necessarily limits the rule's application to evidence introduced during the portion of the proceeding in which guilt is determined. *See State v. Stephenson*, 195 S.W.3d 574, 592 (Tenn. 2006) (construing the term "trial" in Tenn. R. Crim. P. 12 as "the proceeding at which guilt is determined"); *see also* Tenn. R. Crim. P. 43(a) (distinguishing between the arraignment, "every stage of the trial," and sentencing).

In addition to Tenn. R. Crim. P. 16's general discovery rules, Tenn. R. Crim. P. 12.2 contains specific procedures requiring the defendant to give notice of expert testimony regarding any mental disease, defect, or condition "bearing on the issue of [the defendant's] guilt." Tenn. R. Crim. P. 12.2 is likewise inapplicable to pretrial competency proceedings because these proceedings do not involve

---

[8]Tenn. R. Crim. P. 16(b)(1)(A)(ii), 16(b)(1)(B)(ii), (iii).

the issue of the defendant's guilt. They are limited to determining whether the defendant is competent to stand trial.

After correctly concluding that the Tennessee Rules of Criminal Procedure did not explicitly apply to pretrial competency hearings, the Court of Criminal Appeals then determined that Tenn. R. Civ. P. 35.02 should govern the discovery and disclosure of the materials prepared by the defendant's experts in a pretrial competency hearing. Tenn. R. Civ. P. 35.02 governs the discovery of physical and psychological reports of parties in civil cases. Even though the rule is expressly limited to civil proceedings,[9] the Court of Criminal Appeals determined that it was applicable to pretrial competency proceedings in criminal cases because these proceedings are "in the nature of a civil proceeding." *State v. Harrison*, 2007 WL 906730, at *4.

We disagree with the Court of Criminal Appeals that a competency proceeding may be summarily categorized as "in the nature of a civil proceeding." We have already described a competency proceeding as "sui generis." *Coe v. State*, 17 S.W.3d 193, 214 (Tenn. 2000). Thus, while competency proceedings may have attributes of both civil and criminal proceedings, they are neither strictly "criminal" nor strictly "civil." The better approach for determining the applicability of procedural rules is to identify the rights and interests at issue in the proceeding and the context in which the proceeding is taking place and then to determine whether a particular rule is expressly applicable to the circumstance.

After determining that Tenn. R. Civ. P. 35.02 applied to pretrial competency hearings in criminal cases, the Court of Criminal Appeals fashioned the following discovery procedure:

> [T]here should be disclosure to the State of the Defendant's mental health expert's detailed written report setting out findings, including results of all tests conducted, diagnoses and conclusions, together with like reports of all earlier examinations of the same condition. After delivery of the report, the Defendant shall be entitled upon request to receive a like report of any examination previously or thereafter made of the Defendant for the same condition. The court on motion may order delivery of a report on such terms as are just, and, if the examining mental health expert fails or refuses to make a report, the court may exclude testimony if offered at the competency hearing. *See generally* Tenn. R. Civ. P. 35.02.

---

[9]Tenn. R. Civ. P. 1 states, in part, that the Tennessee Rules of Civil Procedure govern "procedures in the circuit or chancery courts in all civil actions, whether at law or in equity."

*State v. Harrison*, 2007 WL 906730, at *4 (footnote omitted). This procedure parallels the procedure prescribed by Tenn. R. Civ. P. 35.02(1).[10]

We have determined that the Court of Criminal Appeals erred by applying Tenn. R. Civ. P. 35.02 to pretrial competency proceedings in criminal cases for two reasons. First, a pretrial competency proceeding in a criminal case is not a "civil action" for the purpose of Tenn. R. Civ. P. 1.[11] Second, the Tennessee Rules of Civil Procedure do not adequately balance the rights and interests of persons who are being prosecuted for criminal offenses.[12]

## C.

Even though the general and specific notice and discovery rules in the Tennessee Rules of Criminal Procedure do not expressly apply to pretrial competency proceedings, it does not necessarily follow that the principles embodied in these rules cannot have some bearing on the formulation of the procedures that should govern discovery in a pretrial competency hearing. We have, in other contexts, used particular procedural rules as templates for procedures to be used in circumstances to which they did not explicitly apply. For example, we have applied the discovery provisions in Tenn. R. Crim. P. 16(b)(1)(B) to capital sentencing hearings even though they were not part of the proceeding at which the defendant's guilt was determined. *State v. Nichols*, 877 S.W.2d 722, 729 (Tenn. 1994). Despite the fact that Tenn. R. Crim. P. 16(b)(1)(B) did not explicitly

---

[10]Tenn. R. Civ. P. 35.02(1) provides:

> If requested by the party against whom an order [for examination] is made under Rule 35.01 or the person examined, the party causing the examination to be made shall deliver to him a copy of a detailed written report of the suitably licensed or certified examiner setting out findings, including results of all tests made, diagnoses and conclusions, together with like reports of all earlier examinations of the same condition. After delivery the party causing the examination shall be entitled upon request to receive from the party against whom the order is made a like report of any examination, previously or thereafter made, of the same condition, unless, in the case of a report of examination of a person not a party, the party cannot obtain it. The court on motion may make an order against a party requiring delivery of a report on such terms as are just, and if a suitably licensed or certified examiner fails or refuses to make a report the court may exclude testimony if offered at the trial.

[11]While the Court of Criminal Appeals cited several decisions by federal courts and other state courts characterizing pretrial competency proceedings as "civil in nature," *State v. Harrison*, 2007 WL 906730, at *4 n.4, we find these decisions unpersuasive in this case for two reasons. First, a proceeding that is "civil in nature" is not necessarily a "civil action" for the purpose of Tenn. R. Civ. P. 1. Second, none of these cases involved the precise issue of discovery of materials prepared by experts in pretrial competency proceedings.

[12]For example, defendants in criminal prosecutions have a right against self-incrimination. While Tenn. R. Crim. P. 12.2(c)(2) accommodates this right, Tenn. R. Civ. P. 35.02 does not. It requires that all expert reports, including those of non-testifying experts, must be disclosed, and Tenn. R. Civ. P. 35.02(2) requires the waiver of any applicable privilege by parties who request or obtain an order of examination under Tenn. R. Civ. P. 35.01. The Court of Criminal Appeals did not address the applicability of Tenn. R. Civ. P. 35.02(2) to pretrial competency proceedings.

apply to capital sentencing hearings, we held that the rule applied because it "precisely" addressed the issue. *State v. Reid*, 981 S.W.2d at 170 n.1.

Pretrial competency hearings arise in the context of criminal prosecutions. When the issue of the defendant's competency is raised, these hearings are an integral part of the prosecution. Thus, even if the Tennessee Rules of Criminal Procedure do not explicitly apply to pretrial competency proceedings, the principles reflected in these rules provide helpful guidance for formulating the procedures for competency proceedings. Specifically, we have determined that the procedures in Tenn. R. Crim. P. 16 and the rules governing the admissibility of the defendant's statements in Tenn. R. Crim. P. 12.2(c)(2) are particularly relevant to competency proceedings.

Over three years have elapsed since Mr. Harrison was indicted. Simply remanding this case to the trial court for further proceedings would only engender additional delay should the State renew its efforts to obtain the materials prepared by Dr. Wilson as part of his examination of Mr. Harrison. Thus, to avoid further delay and in recognition of the fact that discovery requests in the context of pretrial competency proceedings in criminal cases will be made in future cases, we have decided to exercise our inherent supervisory authority over Tennessee's judicial system to adopt temporary procedures governing the discovery and disclosure of evidence in pretrial competency proceedings in criminal cases. These procedures are as follows:

> **Reports of Competency Examinations**. (a) At least fifteen (15) weekdays prior to any hearing on competency to stand trial, the parties shall permit the opposite party, on request, to inspect and copy or photograph any results or reports of psychiatric, psychological, or mental examinations and of scientific tests or experiments made in connection with evaluating the defendant's competency to stand trial, or copies thereof, if:
>
>> (a) the item is within the party's possession, custody, or control; and
>>
>> (b) the party intends to introduce any part of the item as evidence in the party's case-in-chief at the competency hearing; or
>>
>> (c) the party intends to call as a witness at the competency hearing the person who prepared the report, and the results or reports relate to the witness' testimony.
>
> This provision does not limit the State's duty to disclose such information under other appropriate rules or the duty to produce exculpatory evidence.

**Inadmissibility of Defendant's Statements During Competency Examination.** No statement made by the defendant in the course of any examination relating to his or her competency to stand trial (whether conducted with or without the defendant's consent), no testimony by any expert based on such statement, and no other fruits of the statement are admissible in evidence against the defendant in any competency hearing or criminal proceeding, except for impeachment purposes or on an issue concerning a mental condition on which the defendant has introduced evidence of incompetency or evidence requiring notice under Tenn. R. Crim. P. 12.2(a), Tenn. R. Crim. P. 12.2(b), or *State v. Reid*, 981 S.W.2d 166 (Tenn. 1998).

These temporary procedures shall remain in effect until the adoption of a rule specifically governing the discovery and disclosure of evidence in a pretrial competency hearing in a criminal case.

We note one significant difference between this procedure and the procedure prescribed in Tenn. R. Crim. P. 16(b)(1)(B). Under the procedure adopted herein, defense disclosure does not depend on the defendant first requesting discovery from the State. We have determined that open disclosure of the experts' reports enhances the integrity, reliability, and accuracy of the truth-seeking function of a competency proceeding. *See Coe v. State*, 17 S.W.3d at 213. Therefore, this procedure applies even when the defendant does not trigger reciprocal discovery under Tenn. R. Crim. P. 16.

**V.**

We have concluded that the Court of Criminal Appeals correctly determined that the trial court erred by failing to quash the judicial subpoena under Tenn. Code Ann. § 40-17-123(a) obtained by the assistant district attorney general in this case. We have also determined, however, that the Court of Criminal Appeals erred by adopting a discovery procedure for pretrial competency hearings based on Tenn. R. Civ. P. 35.02(1). Exercising our inherent supervisory authority over Tennessee's judicial system, we have adopted a temporary procedure, based on analogous provisions of Tenn. R. Crim. P. 16(b)(1)(B) and Tenn. R. Crim. P. 12.2(c)(2), to be followed for disclosure and use of evidence relating to competency to stand trial. This procedure shall govern all competency hearings held following the date of the filing of this opinion. Accordingly, we affirm in part and reverse in part the judgment of the Court of Criminal Appeals. We remand the case to the trial court for further proceedings consistent with this opinion. We tax the costs of this appeal to the State of Tennessee.

_____
WILLIAM C. KOCH, JR., JUSTICE

-14-