IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
September 13, 2016 Session

**IN RE: CENTERSTONE**

**Appeal from the Circuit Court for Lawrence County**
**No. 33417      Stella L. Hargrove, Judge**
_____

**No. M2016-00308-CCA-WR-CO – Filed January 17, 2017**
_____


Appellant, Centerstone, seeks review of the trial court's denial of a motion to quash a judicial subpoena issued to Centerstone for the mental health records of the victim in an underlying criminal case. Centerstone argues that the judicial subpoena issued pursuant to Tennessee Code Annotated section 40-17-123 is an invalid mechanism for discovery of mental health records made confidential by Tennessee Code Annotated section 33-3-103. After careful consideration, we conclude that access to the confidential mental health records must come by way of the procedure set forth in Tennessee Code Annotated section 33-3-105 rather than through a judicial subpoena issued pursuant to section 40-17-123. Therefore, we vacate the trial court's order and remand the case.

**Tenn. Code Ann. § 27-8-101 Writ of Certiorari; Order of the Circuit Court**
**Vacated; Case Remanded**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT L. HOLLOWAY, JR., JJ., joined.

Allston Vander Horst, Centerville, Tennessee, for the appellant, Centerstone.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; Brent A. Cooper, District Attorney General; and Christi Thompson, Assistant District Attorney General, for the appellee, State of Tennessee.


**OPINION**

This is a unique matter for the Court of Criminal Appeals to consider: on the one hand, a legitimate criminal procedure statute, and on the other, a legitimate mental health privacy statute.

On August 10, 2015, the defendant in the underlying criminal matter was indicted for incest, rape, and statutory rape by an authority figure. During the pre-indictment investigation, on July 9, 2015, the District Attorney's Office for the 22nd Judicial District obtained a judicial subpoena, pursuant to Tennessee Code Annotated section 40-17-123, for the mental health records of the alleged minor victim. The judicial subpoena was served upon Centerstone, a community mental health services provider operating in seventeen Tennessee counties with approximately 50,000 patients. Centerstone informed the State that it would not comply with the subpoena, and the trial court issued a summons to appear and show cause on August 13, 2015. On August 21, 2015, Centerstone filed a motion to quash the judicial subpoena.

The trial court held a hearing on September 1, 2015, during which Scott Valentine, Centerstone's Director of Health Information Management, testified that he had been Centerstone's custodian of records for eighteen years. Centerstone receives approximately twenty to twenty-five judicial subpoenas per year. As a matter of course, Centerstone responds to these subpoenas by informing the requesting party that it should seek disclosure of the records by way of Tennessee Code Annotated section 33-3-105(3), which requires a hearing. Usually, the requesting party will then seek a hearing under the statute. Mr. Valentine testified that during his career, a trial court has never ordered Centerstone to disclose mental health records in order to comply with a judicial subpoena.

After the hearing, the trial court denied the motion to quash but granted Centerstone permission to request an interlocutory appeal under Tennessee Rule of Appellate Procedure 9. This Court denied permission to appeal under Rule 9 but granted certiorari review under Tennessee Code Annotated section 27-8-101.

Centerstone argues that a judicial subpoena issued pursuant to Tennessee Code Annotated section 40-17-123 is not a valid mechanism for discovery of mental health records, which are made confidential by Tennessee Code Annotated section 33-3-103. Instead, Centerstone maintains that access must follow the procedure set forth in Tennessee Code Annotated section 33-3-105(3). The State disagrees.

Regarding mental health records, Tennessee Code Annotated section 33-3-103 provides that

> [a]ll applications, certificates, records, reports, legal documents, and pleadings made and all information provided or received in connection with services applied for, provided under, or regulated under this title and directly or indirectly identifying a service recipient or former service

recipient shall be kept confidential and shall not be disclosed by any person except in compliance with this part.

Tennessee Code Annotated section 33-3-104 establishes several avenues for voluntary disclosure of confidential information, but none of those options are available in this case.[1] Tennessee Code Annotated section 33-3-105(3) permits disclosure without the consent of a service recipient where "a court orders, after a hearing, upon its determination that disclosure is necessary for the conduct of proceedings before it and that failure to make the disclosure would be contrary to the public interest or to the detriment of a party to the proceedings."

Tennessee Code Annotated section 40-17-123(a) establishes the procedure to "be employed when a law enforcement officer . . . seeks to obtain a subpoena for the production of . . . records . . . for the purpose of . . . gathering evidence for the prosecution of a criminal offense." Upon submission of a proper affidavit from a law enforcement officer, a trial court may issue a subpoena for the documents sought "if the judge finds that the affiants have presented a reasonable basis for believing" that:

> (A) A specific criminal offense has been committed or is being committed; (B) Production of the requested documents will materially assist law enforcement in the establishment or investigation of the offense; (C) There exists a clear and logical nexus between the documents requested and the offense committed or being committed; and (D) The scope of the request is not unreasonably broad or the documents unduly burdensome to produce.

T.C.A. § 40-17-123(c). The Lawrence County Circuit Court complied with this procedure before issuing the judicial subpoena for the victim's mental health records.

Whether a judicial subpoena may be used to obtain mental health records made confidential under Title 33 is an issue of first impression. This case presents a question of statutory construction, which is a question of law and is reviewed de novo with no presumption of correctness. *State v. Dycus*, 456 S.W.3d 918, 924 (Tenn. 2015). The primary objective of an appellate court when interpreting statutes is to "carry out the legislative intent without broadening or restricting the statute beyond its intended scope." *State v. McNack*, 356 S.W.3d 906, 908 (Tenn. 2011).

---

[1] The alleged victim in this case turned eighteen in June 2016 and is old enough to authorize the disclosure of his mental health records, *see* T.C.A. § 33-3-104(1) (authorizing disclosure with consent of a "service recipient who is sixteen (16) years of age or over"), but it appears that he is not mentally competent to do so. The record does not establish that the alleged victim has a conservator, an attorney in fact under a power of attorney, or a guardian ad litem. *See* T.C.A. § 33-3-104(2), (3), (5).

In determining whether . . . statutory provisions conflict, and in resolving any existing conflict, we are guided by the following rules of statutory construction. First, a construction which places one statute in conflict with another is to be avoided, and we must endeavor to resolve any possible conflict between statutes in favor of each other in order to provide a harmonious operation of laws. *Graham v. Caples*, 325 S.W.3d 578, 582 (Tenn. 2010). Second, "[w]here a conflict is presented between two statutes, a more specific statutory provision takes precedence over a more general provision." *Id.* Finally, courts may presume that the General Assembly is aware of its own prior enactments and knows the state of the law when it enacts a subsequent statute. *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 527 (Tenn. 2010).

*Lovelace v. Copley*, 418 S.W.3d 1, 20 (Tenn. 2013).

First, we must determine whether these two statutory provisions can be construed harmoniously so as to avoid conflict. Based upon a plain reading of both of the statutes at issue, each one is patently applicable in this case. Section 40-17-123 permits access to records material to a criminal investigation, but Title 33 deems mental health records confidential and prohibited from involuntary disclosure except in limited situations. The State argues that these statutes can be seen to operate harmoniously because the provisions of Section 40-17-123 can be construed to satisfy the requirements of Section 33-3-105(3). Specifically, the State suggests that the "hearing" requirement of Section 33-3-105(3) was satisfied in this case by the ex parte interaction between the trial court and the affiant law enforcement officer. The State also suggests that the showing required for a judicial subpoena under Section 40-17-123(c) is equivalent to the requirement of Section 33-3-105(3) "that disclosure is necessary for the conduct of proceedings before it and that failure to make the disclosure would be contrary to the public interest or to the detriment of a party to the proceedings."

We disagree with both assertions. Although Title 33 does not define the term "hearing" or explain what such a proceeding entails, we are confident that the common understanding of that term includes the expectation that all interested parties are involved.[2] *See Black's Law Dictionary* (10th ed. 2014) (defining a "hearing" as "a

---

[2] The "Judicial Procedures Generally" set forth in Title 33, chapter 3, part 5 appear to contemplate more than an ex parte hearing for judicial proceedings under Title 33. *Cf., e.g.*, T.C.A. § 33-3-502(a) ("In all judicial proceedings under this title[,] the clerk of the court in which the proceedings are held shall keep a careful and accurate record of the proceedings."); T.C.A. § 33-3-505(a)(2) ("For any . . . proceedings under this title, [other than those under chapter 6, part 4], the use of audio visual technology is permissible with the agreement of all parties and at the court's discretion."); *cf. also* T.C.A. § 33-3-505(b) (authorizing the use of "two-way electronic audio-video communication without the physical presence of the defendant, plaintiff, witnesses or attorneys before the court" under certain conditions).

judicial session, usu. open to the public, held for the purpose of deciding issues of fact or of law, sometimes with witnesses testifying"). Moreover, when read in its entirety, Section 33-3-105(3) contemplates that the required hearing would take place amidst some form of previously commenced and ongoing judicial proceedings. Judicial proceedings usually involve more than one party.[3]

Additionally, we agree with Centerstone that an ex parte hearing is inconsistent with the rights of a mental health service recipient as set forth in *State v. Harrison*, 270 S.W.3d 21 (Tenn. 2008). In that case, our supreme court held that a defendant has standing to challenge a judicial subpoena for mental health records directed to the defendant's psychologist. *Id.* at 29. The court adopted the rule that "[a] person has standing to challenge a subpoena issued to a third party, as long as that person asserts a personal right, privilege, or proprietary interest in the materials being sought by the subpoena." *Id.* In doing so, the court also acknowledged that a mental health service recipient has a "legitimate personal interest" in his or her own mental health records. *See id.* Similarly, our sister court has previously gone so far as to suggest that such information maintains some degree of constitutional protection. *See McNiel v. Cooper*, 241 S.W.3d 886, 895 (Tenn. Ct. App. 2006) ("Patients have a constitutionally protected interest in avoiding the disclosure of private, personal information, and their medical records fall within the sphere of constitutionally protected private information." (citing *Whalen v. Roe*, 429 U.S. 589, 599-600 (1977); *In re Search Warrant (Sealed)*, 810 F.2d 67, 71 (3d Cir. 1987))). Accordingly, permitting involuntary disclosure of mental health records pursuant to a judicial subpoena would effectively obviate the right of the subject of those records to challenge the subpoena. Indeed, under Section 40-17-123, the subject of the mental health records may not even know that his or her records have been disclosed pursuant to the judicial subpoena. Although Centerstone, in this case, filed a motion to quash the judicial subpoena, it was under no obligation to do so. Had Centerstone chosen instead to comply with the subpoena, it similarly would not have had an obligation to inform the target of the subpoena that his or her mental health records had been released. Given a patient's personal privacy interest in his or her private health information, a mental health service recipient should be given pre-hearing notice and an opportunity to be heard under Title 33, rather than being forced to rely on the holder of the mental health records to protect the service recipient's interests after an ex parte hearing.

We also disagree that the showing required for issuance of a judicial subpoena is equivalent to the requirements for involuntary disclosure under Title 33. A judicial subpoena, in essence, requires that the documents sought are relevant and material to a

---

[3] Accordingly, it seems that issuance of a pre-indictment judicial subpoena would necessarily fail the requirement that "disclosure is necessary for the conduct of proceedings before" the issuing court because an ongoing criminal investigation, before formal charges are brought, is an extra-judicial affair, not a proceeding over which the court is presiding.

criminal investigation and that the request is reasonable and manageable in scope. Involuntary disclosure of mental health records under Title 33, however, requires necessity from the State, as well as either a detriment to the public interest or to the State in the event of non-disclosure. These two showings are not the same. Relevance and materiality to an ongoing criminal investigation are clearly less demanding requirements than necessity and detriment to the State. Similarly, the judicial subpoena statute's requirements regarding scope are entirely different than Title 33's requirement regarding public interest—one is a matter of form, the other a matter of substance. Although not explicitly articulated in the statute, we determine that the standard under Title 33 requires the court to weigh the public benefit in disclosure for the purpose of furthering a particular criminal investigation against the service recipient's interests in maintaining confidentiality under his or her particular circumstances. *Cf. McNiel*, 241 S.W.3d at 896 (stating, in the context of access to medical records of a physician being investigated by the state licensing board, that "the patient's privacy interests must be balanced with the public's interest in investigating the conduct of licensed physicians"). Given the differences in these standards, we cannot say that satisfaction of the judicial subpoena statute also satisfies the requirements of Title 33.

Because we cannot construe these two statutes so as to avoid conflict, we must next determine whether the question can be resolved based on generality and specificity. While both parties argue that the statute upon which each relies is more specific than the other, we deem Centerstone's argument more persuasive under these circumstances. The judicial subpoena statute should be interpreted as generally authorizing judicially compelled production of documents and information that are not otherwise specifically addressed by other sources of law. We acknowledge that Section 40-17-123 expressly precludes its application to information covered by the constitutional protections of the Fifth Amendment, *see* T.C.A. 40-17-123(g)-(i) (providing accommodations for claims against self-incrimination), and by the statutory confidentiality bestowed pursuant to the Financial Records Privacy Act, T.C.A. 40-17-123(*l*) (stating that "a subpoena shall also comply with the Financial Records Privacy Act . . . as to any records or person covered by that Act"). However, we do not believe that, by the specific enumeration of these exceptions, the General Assembly intended for the judicial subpoena statute to tacitly override all other statutes establishing confidential or privileged information. Instead, we believe these provisions demonstrate the General Assembly intended the judicial subpoena to be a mechanism for the purpose of establishing, investigating, or gathering evidence for the prosecution of a criminal offense. These purposes must yield to confidentiality and privilege bestowed by other sources of law. These two enumerated exceptions are exemplary rather than exclusive. Given that the judicial subpoena statute was not enacted until 2002, we may assume that the General Assembly was aware of the confidentiality statutes in existence at that time, such as Section 33-3-103. We conclude that the General Assembly did not intend for the judicial subpoena statute to supersede all of those statutes without expressly stating an intention to do so.

Furthermore, we note that such a construction of these two statutes is supported by public policy and existing case law. The requirements for issuance of a judicial subpoena, while well-tailored to the needs of law enforcement in criminal investigations when seeking ordinary materials, provide inadequate guidance for the balancing of interests between the State and individuals with privacy interests in particularly sensitive information, such as mental health records. Utilizing a disclosure standard specific to the sensitive nature of the records sought, such as that provided in Section 33-3-105(3), ensures that a trial court considers the unique interests associated with sensitive information of a certain type rather than the general or logistical interests of a holder of non-sensitive information, as provided in 40-17-123(d)(1). Moreover, previous decisions of this Court appear to have assumed that the confidentiality of mental health records pursuant to Title 33 and its accompanying disclosure provisions apply to criminal discovery. *See, e.g.*, *State v. Michael Presson*, No. W2012-00023-CCA-R3-CD, 2014 WL 1669860, at *19-20 (Tenn. Crim. App. Apr. 24, 2014) (indicating that the mental health records of a victim in a criminal case may be disclosed pursuant to Tennessee Code Annotated section 33-3-105 after *in camera* review by the trial court), *perm. app. denied* (Tenn. Nov. 10, 2014).

Centerstone points to the concurring opinion of Judge Tipton, joined by Judge Woodall, in *State v. Jeffrey R. Allen*, No. 03C01-9708-CC-00367, 1999 WL 5173 (Tenn. Crim. App. Jan. 8, 1999). In that case, the court concluded that the defendant was improperly denied access to the mental health records of the victim. There, the trial court found that the records could contain exculpatory material after an *in camera* inspection, but it did not follow through with ensuring that the material was turned over to the defendant. In dicta, the majority opinion suggested that the district attorney had the authority to unilaterally access the mental health records of a victim receiving mental health treatment in State-operated facility and also had a duty to review those mental health records for potentially exculpatory material. The concurring opinion disavowed the majority's suggestion, stating:

> I question [the majority's] implication that the district attorney general is authorized to review medical/mental health records regarding a criminal victim's treatment in a state mental health facility without having either prior authorization from the trial court under T.C.A. § 33-3-104(10)(A)(iv)[4] or prior consent of the victim. The confidentiality provided by the statute is for the benefit of the mental health patient. There is no exception for prosecutors when the patient becomes a victim of crime.
>
> . . . .

---

[4] Subsequently codified at Tennessee Code Annotated section 33-3-105(3).

I believe that the duty in the present case was upon the trial court to determine by a review of the records whether disclosure was proper under T.C.A. § 33-3-104(10)(A)(iv). The statutory confidentiality is for the benefit of the victim, and it does not depend upon whether the victim received treatment in a private or public mental health facility. . . . [D]isclosure of the records to either side pursuant to the statute must follow—not precede—the trial court's determination that "disclosure is necessary for the conduct of proceedings before it and that failure to make such disclosure would be contrary to public interest or to the detriment of either party to the proceedings." T.C.A. § 33-3-104(10)(A)(iv).

*Id.* at 9-10. Although the facts and procedural posture of *Jeffrey R. Allen* are somewhat different from those in this case, we find the concurring opinion persuasive. Like the concurring opinion in *Jeffrey R. Allen*, we conclude that involuntary disclosure of confidential mental health records in criminal matters must follow the procedure set forth in Section 33-3-105(3).

In conclusion, we hold that a judicial subpoena issued pursuant to Tennessee Code Annotated section 40-17-123 is an invalid mechanism for discovery of mental health records made confidential under Tennessee Code Annotated section 33-3-103. Going forward, involuntary disclosure of such records in criminal investigations must proceed in accordance with Tennessee Code Annotated section 33-3-105. Because the trial court in this case did not make a determination under Section 33-3-105(3) and did not give the service recipient an opportunity to be heard on this matter, the order of the trial court is vacated, and the case is remanded for a hearing that conforms with Section 33-3-105(3).

_____
TIMOTHY L. EASTER, JUDGE