IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
August 20, 2019 Session

## STATE OF TENNESSEE v. DUSAN SIMIC

**Appeal from the Criminal Court for Davidson County**
**No. 2017-D-2344, 2018-A-83      Monte Watkins, Judge**

_____

### No. M2018-01995-CCA-R9-CD

_____

The Defendant, Dusan Simic, was indicted for various offenses committed in the course of a series of robberies in July and August of 2017. The trial court granted the Defendant's motion to suppress out-of-court identifications made by four victims on the basis that the photographic lineups were unduly suggestive. The trial court and subsequently this court granted interlocutory review. The State asserts that interlocutory review is proper and that the trial court erred in determining that the lineups were suggestive; the Defendant disagrees. We conclude that interlocutory appeal was improvidently granted. Accordingly, we dismiss the appeal and remand for further proceedings.

**Tenn. R. App. P. 9 Interlocutory Appeal; Appeal Dismissed; Case Remanded**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Assistant Attorney General; Glenn R. Funk, District Attorney General; and Kristen Kyle-Castelli and Sara Diehl, Assistant District Attorneys General, for the appellant, State of Tennessee.

Bernard F. McEvoy, Nashville, Tennessee, for the appellee, Dusan Simic.

# OPINION

## FACTUAL AND PROCEDURAL HISTORY

The Defendant was identified through the use of photographic lineups by four separate victims in a series of robberies, and he was charged with the carjacking of Ms. Sandra Ortiz-Munoz committed on July 20, 2017; with the aggravated robbery of Ms. Ortiz-Munoz on the same date; with the aggravated robbery of Ms. Maria Zarco committed on July 30, 2017; with two counts of aggravated assault committed against Ms. Zarco's minor children on the same date; with the robbery of Ms. Lesvia Turcios-Hernandez committed on July 30, 2017; with the aggravated robbery of Ms. Loida Correa committed on August 1, 2017;[1] with two counts of aggravated assault committed against Ms. Correa's minor children on the same date;[2] and with various other offenses, including evading arrest in a motor vehicle, theft of a license plate from Mr. Paul Pickard, driving under the influence ("DUI"), driving with a suspended or revoked license, and possession of drug paraphernalia, all committed on August 2, 2017.

The Defendant moved to suppress the out-of-court identifications made by the four victims of the robberies on the basis that the various lineups were impermissibly suggestive. In its brief summarizing the facts related to the identifications, the State recited that a vehicle had been stolen from Ms. Ortiz-Munoz, that Ms. Turcios-Hernandez had obtained a license plate number that established that the stolen car was used in robbing her, that the stolen vehicle was matched through surveillance footage to the vehicle used in the robbery against Ms. Correa, and that it was "the same vehicle the Defendant was seen driving days after that attack." The State also argued that, even if the court were to determine that the lineups were unduly suggestive, the witness identifications were nevertheless reliable. At the hearing, the parties agreed to address only whether the lineups were impermissibly suggestive, leaving the question of reliability, which might require testimony from the victims, for a later time.

The trial court held a hearing and issued a written ruling which addressed both the suggestiveness of the lineups and the reliability of the identifications, ultimately concluding that the out-of-court identifications must be suppressed. The trial court recited the legal standard for reliability and made factual determinations relevant to reliability, finding that "[e]ach alleged victim had an opportunity to observe the defendant, observed the defendant in close proximity, gave a description of the defendant, gave a positive identification of the defendant, and identified the defendant

---

[1] The offenses committed on August 1, 2017, were charged in a separate indictment.

[2] We glean from the motions filed in the trial court that the victims of these assaults were Ms. Correa's minor children.

within the same day to within two weeks of the encounter." The trial court found that no statements were made during the lineups and that the victims chose the Defendant "unequivocally."

The trial court then found the lineups were unduly suggestive. Initially, the trial court found that the complexions, hairstyles, and hair color of the subjects of the photographs were "somewhat similar." However, the trial court found that these characteristics were "grossly dissimilar" from the witness descriptions, noting that "[t]he photographic lineups contain individuals of different ages, different complexions, different hairstyles and color than the descriptions given by the victims." The court found that the lineups were faulty because they contained photographs of subjects "older than the defendant, of a different race than defendant, and different from the descriptions given by the witnesses." The court also observed that "the lineup was comprised in such a way that the suspect would stand out among the other photos in the lineup." The court granted the motion to suppress.

The State filed a motion for permission to appeal this order under Tennessee Rule of Appellate Procedure 9. The State noted in its motion that the parties had agreed to limit proof at the hearing to suggestiveness and to postpone any proof regarding reliability but did not request relief regarding this irregularity. The State asserted that interlocutory appeal was necessary to prevent irreparable injury because "[i]f the State is forced to proceed to trial without the photographic lineups and a jury acquits without being allowed to consider important evidence, the State is left without an avenue for recourse." During the extremely brief hearing on the motion, defense counsel stated that he did not believe the motion required proof. The trial court agreed that no proof would be necessary and made statements appearing to indicate that it would reflexively grant a motion for interlocutory appeal. The trial court's order granting appeal stated that the suppressed evidence constituted "the bulk" of the case.

A divided panel of this court granted the State's application for interlocutory appeal. In granting the appeal, this court adopted the reasons supporting interlocutory appeal set out by the trial court and approved the trial court's findings that "the suppressed evidence 'constitut[es] the bulk of the State's case' and 'it would be almost impossible for the State to prove the defendant's guilt' without it." *State v. Dusan Simic*, No. M2018-01995-CCA-R9-CD, at \*3 (Tenn. Crim. App. Jan. 31, 2019) (order). The court concluded that the suppression eliminated any reasonable probability of successful prosecution. *Id.*

One judge dissented from the decision to grant interlocutory appeal, concluding that the merits of the suppression issue should not be reached because the State had made no showing of irreparable injury. *Id.* (Woodall, J., dissenting). The dissent observed that

the trial court's ruling did not prevent the State from asking the witnesses to make an identification during trial and that the State had introduced no proof regarding how the suppressed pretrial identifications would affect the strength of its case. *Id.* at *1, 3. Likewise, the dissent concluded that the State had not shown that the courts had not established a uniform body of law. *Id.* at *2. Observing that the State had "utterly failed" to demonstrate irreparable injury, the dissent concluded review was inappropriate. *Id.* at *3. The dissent also concluded that, on the record before us, the trial court abused its discretion in granting interlocutory appeal both because its oral ruling appeared to indicate that it would routinely grant Rule 9 applications and because its finding that the evidence constituted the bulk of the State's case was not supported by the evidence. *Id.* at *6-7.

## ANALYSIS

On appeal, the State argues that the trial court erroneously suppressed the evidence and that the Defendant essentially waived any argument opposing the granting of interlocutory appeal. The Defendant responds that the appeal was improvidently granted and that the trial court did not err in suppressing the evidence. We conclude that because the State has failed to carry its burden of showing irreparable injury, the appeal was improvidently granted and must be dismissed.

The State generally has no right to appeal in a criminal prosecution "unless the right is expressly conferred by a constitutional provision or by statute." *State v. Meeks*, 262 S.W.3d 710, 718 (Tenn. 2008). A statute conferring such right will be strictly construed to encompass only the circumstances listed in the statute, and the State may not appeal pursuant to a general grant of appellate jurisdiction. *Id.* As pertinent here, Tennessee Rule of Appellate Procedure 9 permits trial and appellate courts to consider a discretionary appeal from an interlocutory order in a criminal case. Tenn. R. App. P. 9(a), (f). However, "interlocutory appeals to review pretrial orders or rulings, i.e., those entered before a final judgment, are 'disfavored,' particularly in criminal cases" because they may create piecemeal litigation and delay. *State v. Gilley*, 173 S.W.3d 1, 5 (Tenn. 2005) (quoting *United States v. MacDonald*, 435 U.S. 850, 853 (1978)). Accordingly, "it is incumbent on the party seeking the appeal—in this case the State—to satisfy the court or courts that there are appropriate grounds for an interlocutory appeal." *Meeks*, 262 S.W.3d at 720.

Tennessee Rule of Appellate Procedure 9 observes that such appeals are discretionary and provides that:

> . . . In determining whether to grant permission to appeal, the following, while neither controlling nor fully measuring the courts' discretion, indicate

the character of the reasons that will be considered: (1) the need to prevent irreparable injury, giving consideration to the severity of the potential injury, the probability of its occurrence, and the probability that review upon entry of final judgment will be ineffective; (2) the need to prevent needless, expensive, and protracted litigation, giving consideration to whether the challenged order would be a basis for reversal upon entry of a final judgment, the probability of reversal, and whether an interlocutory appeal will result in a net reduction in the duration and expense of the litigation if the challenged order is reversed; and (3) the need to develop a uniform body of law, giving consideration to the existence of inconsistent orders of other courts and whether the question presented by the challenged order will not otherwise be reviewable upon entry of final judgment. Failure to seek or obtain interlocutory review shall not limit the scope of review upon an appeal as of right from entry of the final judgment.

Tenn. R. App. P. 9(a).

A party wishing to appeal an interlocutory order to an appellate court is taxed with providing the court with a statement of the issues, "a statement of the facts necessary to an understanding of why an appeal by permission lies," a statement of the reasons supporting interlocutory appeal, and an appendix containing specified parts of the record, including those "necessary for determination of the application for permission to appeal." Tenn. R. App. P. 9(d). Any other party "may" file an answer. Tenn. R. App. P. 9(d). Granting appellate review constitutes a separate exercise of discretion. Tenn. R. App. P. 9(b).

We begin by addressing the State's argument that defense counsel's statement to the trial court that he did not believe the motion for interlocutory appeal necessitated proof precludes him from opposing the State's request for interlocutory appeal now. This amounts to an argument that any opposition to interlocutory appeal is waived. However, as noted above, the State's right to an appeal must be predicated upon a constitutional provision or statute. *Meeks*, 262 S.W.3d at 718. In *State v. Gilley*, both parties sought interlocutory review of a trial court's ruling on a motion to suppress, but the Tennessee Supreme Court nevertheless concluded that interlocutory appeal was inappropriate. 173 S.W.3d at 5-6; *see also State v. Gawlas*, 614 S.W.2d 74, 75 (Tenn. Crim. App. 1980) (concluding that failure to follow the strictures of Rule 9 defeated this court's jurisdiction). As in *Gilley*, our decision to grant interlocutory review is a separate exercise of judicial discretion, and we conclude that we must exercise our discretion under the statute regardless of any purported waiver of our consideration of the propriety of interlocutory appeal.

In the case at bar, the State initially sought, and the trial court granted, interlocutory review based on irreparable injury. In seeking review in this court, the State also argued the need to "maintain a uniform body of law." We agree with the dissent of the panel granting review that the legal standard is the necessity to "develop" not to "maintain" a uniform body of law, and that the State has not shown that review is appropriate under this provision. *Dusan Simic*, No. M2018-01995-CCA-R9-CD, at *2 (Woodall, J., dissenting). In its subsequent brief, the State asserted that the trial court misapplied the correct legal standard and that this resulted in the development of new law. However, the State does not argue that there is ambiguity in the established legal standards pertaining to the suggestiveness of lineups. The trial court's misapplication of the correct legal standards might be error, but it does not demonstrate the lack of a uniform body of law. We likewise reject the State's argument, which is raised for the first time in its brief and based on the speculation that a lesser quantum of proof could result in a hung jury, that review is necessary to prevent needless, expensive, and protracted litigation.

The State also argues irreparable injury. Interlocutory appeal may be "especially appropriate" where "no procedure is otherwise specifically prescribed" for review. *Reid v. State*, 197 S.W.3d 694, 699 (Tenn. 2006); *see State v. Harrison*, 270 S.W.3d 21, 30 (Tenn. 2008) (granting interlocutory review regarding proper procedure for pretrial psychological discovery in competency determination). "When an order suppresses or excludes evidence and thereby eliminates the heart of the State's case, requiring the State to proceed to trial without the suppressed evidence could result in irreparable injury to the public's interest if the accused is acquitted." *Meeks*, 262 S.W.3d at 720. Accordingly, if the suppression of evidence "eliminates any reasonable probability of a successful prosecution," this court should exercise its discretion to grant Rule 9 review. *Id.* Interlocutory review of suppression determinations allows the parties to review "questionable rulings" and by providing prompt review, decreases the repetition of error. *Id.* at 721.

In *Gilley*, both the State and the defendant sought review of the trial court's partial denial and partial grant of a pretrial motion to suppress. *Gilley*, 173 S.W.3d at 5. The Tennessee Supreme Court recognized that if the State's evidence were excluded and the defendant were acquitted, the State would be unable to obtain review of the trial court's decision. *Id.* at 6. The Court nevertheless observed, "That alone, however, does not end the inquiry." *Id.* The Court determined that it was error for the lower courts to grant interlocutory review, concluding that an appellate ruling was not necessary to achieve uniformity in the law because the trial court would have the flexibility to revise its ruling based on Tennessee Rule of Evidence 404(b) at trial and because the trial court's decision was not likely to result in needless, expensive, and protracted litigation. *Id.*; *compare State v. McCoy*, 459 S.W.3d 1, 8 (Tenn. 2014) (granting review of the suppression of

video evidence even though the witness was available to testify "[b]ecause the constitutionality of the statute presents an issue of first impression and provides the opportunity to resolve an important question of law and settle an issue of public interest").

Here, if the State were to proceed to trial without the suppressed evidence and the Defendant were acquitted, there would be no mechanism to review the suppression decision. This circumstance weighs in favor of interlocutory appeal. *Reid*, 197 S.W.3d at 699. However, the Tennessee Supreme Court has cautioned that potential absence of review alone "does not end the inquiry." *Gilley*, 173 S.W.3d at 6.

This court has considered the quantum of the State's proof in assessing whether suppression would work irreparable injury. *See State v. Raffael Fansano*, No. E2018-00664-CCA-R9-CD, 2019 WL 1785339, at *7 (Tenn. Crim. App. Apr. 24, 2019) (noting that the State had stated that there was little evidence other than the suppressed statement), *no perm. app. filed*; *cf. State v. Boyce Turner*, No. E2013-02304-CCA-R3-CD, 2014 WL 7427120, at *4 (Tenn. Crim. App. Dec. 30, 2014) (suppressing blood test results would eliminate any probability of a successful prosecution because no field sobriety tests were performed and the ruling was therefore appealable under Rule 10). In this case, the State presented merely a conclusory assertion that it would suffer irreparable injury, but the record contains nothing demonstrating the importance of the suppressed evidence to the State's case. *See Meeks*, 262 S.W.3d at 720. In essence, the State wishes this court to reflexively grant interlocutory review whenever evidence favorable to the State is suppressed, but this is not the correct legal standard. Instead, the legal standard is a showing of "irreparable injury." Tenn. R. App. P. 9(a).

As the defense points out, the trial court did not exclude any potential in-court identifications made by the witnesses for the State. Rule 9(a) directs us to consider "the severity of the potential injury" and "the probability of its occurrence," but without any inkling of the contours of the State's case, we are unable to follow the dictates of the Rule. *Meeks* states that interlocutory review should be granted when suppression of the evidence would destroy "the heart" of the State's case. *Meeks*, 262 S.W.3d at 720. While we do not decide what showing would demonstrate irreparable injury, we conclude that the State has not shown irreparable injury here. The State's own motion described the evidence as merely "important evidence," and the prosecution never represented to the court that the absence of the evidence would in any way hinder the prosecution but only noted the absence of review. "[I]t is incumbent on the party seeking the appeal—in this case the State—to satisfy the court or courts that there are appropriate grounds for an interlocutory appeal." *Id*. In this case, the State has not met this burden. We furthermore agree with the dissent from the panel granting review that the trial court's factual finding that the evidence is "the bulk of the State's case" is not supported by the

record and that the trial court's oral ruling implying that it would grant Rule 9 review as a matter of right applies an incorrect legal standard. *Dusan Simic*, No. M2018-01995-CCA-R9-CD, at *6-7 (Woodall, J., dissenting).

We conclude that the State, by presenting nothing from which we could conclude that the suppression would cause irreparable injury, has not met its burden. Accordingly, we determine that review was improvidently granted, and we remand the case for further proceedings. *See State v. Brian J. Hunter*, No. 02C01-9708-CR-00309, 1998 WL 473887, at *1 (Tenn. Crim. App. Aug. 14, 1998) (concluding that review was improvidently granted in part); *State v. Michael Barone*, No. C.C.A. 89-22-III, 1989 WL 28305, at *1 (Tenn. Crim. App. Mar. 28, 1989). Our determination in no way expresses an opinion regarding the propriety of the trial court's ruling suppressing the evidence.

## CONCLUSION

Based on the foregoing reasoning, we conclude that interlocutory appeal was improvidently granted, and we dismiss the appeal.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE